363 A.2d 1322
**COMMONWEALTH of Pennsylvania**

v.

**Joseph BALL, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

380

Calvin S. Drayer, Jr., Asst. Public Defender, Norristown, for appellant.

Stewart J. Greenleaf, Asst. Dist. Atty., Chief, Appeals Div., Norristown, for appellee.

Before WATKINS, President Judge and JACOBS, HOFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge.

This is an appeal from the lower court's order revoking appellant's probationary status and imposing several terms of imprisonment.  Appellant argues that his probation revocation hearing was deficient because he was not afforded the due process safeguards mandated by *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed. 2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  Specifically, appellant contends that due process was violated because he did not receive written notice of the alleged probation violations. In addition, appellant challenges the legality of the prison sentences imposed following the revocation hearing.

On January 8, 1974, and April 26, 1974, appellant pleaded guilty to several offenses and was sentenced to four years probation on a burglary charge, two years proba-

tion for theft of moveable property, and two years probation on a charge of receiving stolen property, all three sentences to run concurrently. While serving probation, however, appellant was arrested twice on new criminal charges: On June 17, 1974, for burglary, larceny, receiving stolen property, and conspiracy; and on June 19, 1974, for criminal attempt and conspiracy. On August 23, 1974, following a preliminary hearing on the new charges, but prior to trial, a probation revocation hearing [1] was conducted. This hearing was continued in part until September 3, 1974, at which time appellant's probation was revoked and he was sentenced to prison for two to four years on the burglary conviction. On the other two convictions, prison sentences of one to two years—to run concurrently with the other sentence—were imposed.

An appeal was then taken to this court and we vacated the judgment of sentence and remanded for further probation revocation proceedings because the lower court had not specifically found good cause for not allowing appellant to confront an adverse witness at the hearing. *Commonwealth v. Ball*, 235 Pa.Super. 581, 344 A.2d 675 (1975). Accordingly, the lower court conducted a second *Gagnon II* hearing on November 14, 1975. In the meantime, however, appellant pleaded guilty to the new criminal charges which had precipitated the probation revocation proceedings, i. e., the arrests of June 17 and 19 of 1974. At the conclusion of appellant's second *Gagnon II* hearing, the lower court revoked probation and appellant was again sentenced to not less than two nor more than four years imprisonment on the burglary charge. Likewise a concurrent sentence of one to two years imprisonment was imposed on the charge of receiving stolen property. On the charge of theft of moveable property, however, appellant received a prison sentence of one to two

---

1. This is the proceeding which is commonly referred to as the *Gagnon II* hearing, that is conducted prior to the making of any final revocation decision. See *Commonwealth v. Davis*, 234 Pa. Super. 31, 336 A.2d 616 (1975).

years *consecutive* with the sentence imposed on the burglary charge. This appeal followed.

We turn first to appellant's contention that his probation was improperly revoked because he did not receive written notice of his alleged probation violations. In *Morrissey v. Brewer,* supra, 408 U.S. at 488–89, 92 S. Ct. at 2604, the Supreme Court held that minimum due process requires that an alleged parole violator be provided, inter alia, "written notice, of the claimed violations of parole." These same due process requirements, including the right to receive written notice of the alleged violations, were subsequently extended to probation revocation proceedings. *Gagon v. Scarpelli,* supra. Moreover, in a series of cases this court has held that defendants are not only entitled to written notice of alleged violations, but that this issue of notice will not be deemed waived even though the defendant does not object to the lack of written notice at the probation revocation hearing. *Commonwealth v. Kile,* 237 Pa.Super. 72, 346 A.2d 793 (1975); *Commonwealth v. Stratton,* 235 Pa.Super. 566, 344 A.2d 636 (1975); *Commonwealth v. Henderson,* 234 Pa.Super. 498, 340 A.2d 483 (1975); *Commonwealth v. Alexander,* 232 Pa.Super. 57, 331 A.2d 836 (1975).

In the case at bar we agree with appellant that the record does not presently contain the written notices of the alleged violations. The record does reflect, however, that appellant was well aware of the charges against him and in no wise hampered in his preparation for the second *Gagnon II* hearing. Indeed, our examination of the record discloses several reasons why appellant's argument regarding lack of notice is frivolous.

Initially, it appears from the record that appellant was provided with notice of the alleged violations prior to his first *Gagnon II* hearing, but that notice was not again given before the second *Gagnon II* hearing was conduct-

ed.[2]  In this regard, the following discussion, which transpired at appellant's second *Gagnon II* hearing, is revealing:

"By Mr. Huganir (counsel for the appellant):
Excuse me. I'd like to know if this was part of the notification. I realize the change of address was absent, but is this part of the notification that he had broken the terms of his probation by the fact of the test showing positive? I realize that was brought out in hearing, but I wonder if that was . . . . .

By the Court:
Well this is the second one now.  He had it the first time, now he's at the second one.

\*     \*     \*     \*     \*     \*     \*     \*

By Mr. Huganir:

I was talking in terms of the specific allegations of the violations, not just in terms of the time of the hearing. And since no subsequent notice was received other than the one which Your Honor—other than the one which related to the hearing before. *So I assume the same violations would apply, and that since the defendant has subsequently pleaded guilty there is really no—not any controversy so far as the violations are concerned.*"  [Emphasis added.]

Thus it appears that prior to appellant's first *Gagnon II* hearing he received notice that he had violated the terms of his probation by committing new crimes on June 17th and 19th of 1974.  Since this notice was obviously sufficient for the first *Gagnon II* hearing, we perceive no reason why it should not suffice for the second *Gagnon II* hearing.  Furthermore, assuming for the sake of argument that appellant did not receive advance written notice prior to his first *Gagnon II* hearing that the criminal

2.  The notice we speak of here relates solely to the criminal charges brought against appellant in June of 1974 as constituting violations of his probation.

charges filed against him in June of 1974 were deemed to be probation violations, it is nonetheless clear that during the course of this first *Gagnon II* hearing he was informed of this fact.[3] While this could not constitute adequate advance notice for appellant's first *Gagnon II* hearing, it would certainly serve as sufficient notice for the purposes of appellant's second *Gagnon II* hearing. Under these circumstances, we entertain no doubt that appellant was afforded the due process safeguards required by *Gagnon v. Scarpelli,* supra.

In addition, the record further discloses appellant's satisfaction with the sufficiency of his second *Gagnon II* hearing. At the second *Gagnon II* hearing the following exchange occurred during defense counsel's cross examination of appellant's probation officer:

"By Mr. Huganir (appellant's counsel):

The violation, the alleged violation concerning the positive for heroin, the urine specimen, was that one of the itemized violations on the notice which was given to this Defendant with respect to this hearing?

By Mr. Chancellor (appellant's probation officer):

With respect to that, I have no record of any formal written notification given to the Defendant.

By Mr. Huganir:

Right. So I would say that that would—cannot be considered at this time, since its obvious . . ..

**3.** At the first *Gagnon II* hearing appellant's probation officer testified, in pertinent part, as follows:

"Since that time there have been new charges which would constitute a violation of Judge Vogel's parole period imposed August 24, 1973, and in addition to that he is in violation of the probationary period imposed by your Honor on April 26, 1974.

"These violations being that the defendant was arrested in Cheltenham Township on June 17, 1974, charged with burglary, theft, receiving stolen property and conspiracy, and he was released on one thousand dollars bail.

\* \* \* \* \* \* \* \*

"Also, on June 19, 1974, the defendant was arrested in Abington Township and charged with criminal attempt and criminal conspiracy, the attempt being an attempted burglary and he was released on one thousand dollars."

By the Court:

What can't be considered?

By Mr. Huganir:

Since the defendant was not notified of the violations, specifically the urine specimen, that it cannot be considered as far as a violation ·in this hearing. But I really don't think that this is at all necessary to go into this—I'm just making the point—because, you know, now he has pleaded guilty to the other violations subsequent to that, and I think that the only thing we need to do now is consider the sentence.

By the Court:

Do you feel that we have satisfied the Gagnon second requirement?

By Mr. Huganir:

Well there is no—yes, sir. By the fact that he has pleaded guilty we do not need to make up the deficiency in the prior hearing."

Although we have previously held that the right to written notice of the alleged violations cannot be waived by a defendant's failure to object to the lack of notice in the court below, we are not disposed to extend this rule to situations—such as in the case at bar—where defendant's counsel specifically notes his satisfaction with the sufficiency of the *Gagnon II* hearing.

■ Appellant's remaining contention is that the lower court erred in imposing a more severe sentence upon him at the second revocation hearing than had been previously imposed at the first probation revocation hearing. We must agree. To reiterate, in January and April of 1974, appellant pleaded guilty to several charges and was sentenced to concurrent sentences of four years probation for burglary; two years probation· for theft of moveable property; and two years probation for receiving stolen property. As a result of two arrests during the probationary period, however, revocation proceedings

were commenced. At the conclusion of these proceedings
(the first *Gagnon II* hearing) appellant's probation was
revoked and he was sentenced on the original charges as
follows: two to four years imprisonment for burglary;
one to two years imprisonment for theft of moveable
property; and one to two years imprisonment for receiv-
ing stolen property—all sentences to run concurrently.
Appellant appealed and we vacated the judgment of sen-
tence and remanded for proper revocation proceedings.
See *Commonwealth v. Ball*, 235 Pa.Super. 581, 344 A.2d
675 (1975). Pursuant to our order the lower court con-
ducted a second *Gagnon II* hearing and once more appel-
lant's probation was revoked. On the burglary charge
appellant was again sentenced to a prison term of two to
four years. Likewise appellant received the same sen-
tence on the receiving stolen property charge as was im-
posed at the first revocation hearing; that is, a concur-
rent sentence of one to two years. On the theft of move-
able property, however, the lower court imposed a differ-
ent sentence. In place of the previous one to two year
concurrent sentence, the lower court imposed a *consecu-
tive* sentence of one to two years. In so doing the court
erred.

In the leading decision of *North Carolina v. Pearce*, 395
U.S. 711, 725–26, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656
(1969) the Supreme Court held that:

"Due process of law, then, requires that vindictiveness
against a defendant for having successfully attacked
his first conviction must play no part in the sentence he
receives after a new trial. And since the fear of such
vindictiveness may unconstitutionally deter a defend-
ant's exercise of the right to appeal or collaterally at-
tack his first conviction, due process also requires that
a defendant be freed of apprehension of such a retalia-
tory motivation on the part of the sentencing judge.

"In order to assure the absence of such motivation, we
have concluded that whenever a judge imposes a more

severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

In the instant case, the lower court's rationale for the increased sentence was that in the intervening period between the first and second revocation hearings appellant pleaded guilty to the underlying offenses which formed the basis for the commencement of the revocation proceedings. We conclude that appellant's guilty pleas to the underlying offenses do not constitute such a change of circumstances as to justify the imposition of a more severe sentence. See *Commonwealth v. Sinwell*, 223 Pa.Super. 544, 302 A.2d 400 (1973). The guilty pleas did not constitute the type or nature of "identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing proceeding." [Emphasis supplied.] *North Carolina v. Pearce*, supra, 395 U.S. at 726, 89 S.Ct. at 2081; see also *Commonwealth v. Werner*, 444 Pa. 458, 465, 282 A.2d 258 (1971). The guilty pleas were simply the formal admission of criminal misconduct by the appellant which the lower court had already determined the appellant had committed when it revoked his probation and sentenced him the first time.

Accordingly, the one to two year consecutive sentence imposed on November 14, 1975, on the charge of theft of moveable property is vacated, and the one to two year concurrent sentence imposed on the same charge on September 3, 1974, is reinstated. The remaining judgments of sentence are affirmed.

VAN der VOORT and SPAETH, JJ., concur in the result.