# Commonwealth *v.* Davis, Appellant.

34

Submitted September 17, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Elaine DeMasse* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*John Cooper, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 31, 1975:

This is an appeal from revocation of probation and subsequent imposition of prison sentence. Appellant contends that the revocation was error because it was based solely on the fact that he was arrested during his probationary period. We have concluded that we must remand for a further hearing because the two-step revocation procedure required by *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), *Morrissey v. Brewer,* 408 U.S. 471 (1972), and *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), was not followed.

On May 4, 1972, appellant pleaded guilty to burglary of a motor vehicle and carrying a concealed deadly weapon, and was placed on probation.[1] When he failed to comply with the rules of his probation in not reporting to his probation officer, the Probation Department, in May, 1973, placed him in a "non-reporting status." In the meantime, in February, appellant had joined the United States Army and had left the Commonwealth, which was

---

1. This was pursuant to the Act of August 6, 1941, P.L. 861, §25, 61 P.S. §331.25, which provides: "Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence to imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed."

also contrary to the rules of his probation. On October 16, 1973, after a hearing, appellant's probation was revoked and he was placed on a longer probation (a three year period followed by a one year period), and was warned that any further probation violations would result in imprisonment.

On January 24, 1974, appellant, while absent without leave from the Army, was arrested and charged with burglary, theft, and receiving stolen property. These charges arose from the theft of a television set from Our Lady of Sorrows Church at 48th Street and Wyalusing Avenue in Philadelphia. On March 7, 1974, the charges were dismissed because the pastor of the church declined to prosecute and the mother of the only eyewitness, a child, would not permit him to testify. There was no preliminary hearing.

On March 28, 1974, the violation of probation hearing presently at issue was held.[2] Appellant's probation was revoked, and he was sentenced to six months to five years imprisonment.

I

In approaching the problem presented by this case, it is important to bear in mind the purpose of an order placing a defendant on probation. This purpose has been described in the ABA Project on Standards for Criminal Justice, Standards Relating to Probation (Approved Draft, 1970), p. 1, as follows:

> "The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned

---

2. This was pursuant to the Act of June 19, 1911, P.L. 1055, §4, 19 P.S. §1055, which provides: "Whenever a person placed on probation, as aforesaid, shall violate the terms of his or her probation, he or she shall be subject to arrest in the same manner as in the case of an escaped convict; and shall be brought before the court which released him or her on probation, which court may thereupon pronounce upon such defendant such sentence as may be prescribed by law, to begin at such time as the court may direct."

with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement. Banishment from society, in a word, is not the way to integrate someone into society. Yet imprisonment involves just such banishment—albeit for a temporary sojourn in most cases."

In the ABA Project on Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, §2.3(c) (Approved Draft, 1968), it is said that a sentence not involving confinement is to be preferred to "[a] sentence involving partial or total confinement in the absence of affirmative reasons to the contrary."[3] *See also* National Advisory Commission on Criminal Justice Standards and Goals, Task Force on Corrections, p. 311 *et seq.* (1973).

The rehabilitative purposes of an order of probation determine the nature of the hearing on whether the order should be revoked. Thus in *Commonwealth v. Kates,* 452 Pa. 102, 114-15, 305 A.2d 701, 708 (1973), the court stated:

"The focus of a probation violation hearing, even though prompted by a subsequent arrest, is whether the conduct of a probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future

3. This standard has now become the law of Pennsylvania: Sentencing Code, 18 Pa. C.S. §1321(b) (1974).

anti-social conduct . . . When it becomes apparent that the probationary order is not serving this desired end the court's discretion to impose a more appropriate sanction should not be fettered . . . Certainly, society has the right to expect a prompt hearing when a probationer has allegedly engaged in a course of criminal activity."

The decision that probation will no longer be effective, and that the order placing the defendant on probation should therefore be revoked, must be based on evidence of "probative value." *Commonwealth v. Kates, supra,* at 18-19, 305 A.2d at 710. "[M]ere arrests and indictments, without convictions . . . have no value as probative matter." *Commonwealth v. Jones,* 355 Pa. 594, 598, 50 A.2d 342, 344 (1947). Therefore, evidence of some facts in addition to the fact of arrest is necessary before a court may revoke probation. *Commonwealth v. Newman,* 225 Pa. Superior Ct. 327, 329, 310 A.2d 380, 381 (1973).

## II

In *Gagnon v. Scarpelli, supra,* the United States Supreme Court specified the procedure that must be followed to insure that an order revoking probation will be based on evidence containing proper probative value. *Gagnon* was filed six days after *Commonwealth v. Kates, supra.* While the two decisions are consistent, *Gagnon* represents a more detailed analysis of probation revocation procedures, and *Kates* must be read to comport with it.

Although revocation of probation, like revocation of parole, is not part of a criminal prosecution, *Gagnon v. Scarpelli, supra* at 781, it entails a loss of liberty and minimum due process must therefore be accorded the probationer. What *Gagnon* held was that the minimum due process requirements for probation revocation are identical to those established in *Morrissey v. Brewer,*

*supra,* for parole revocation.[4] Specifically, a two step revocation procedure must be followed.[5] "[A] parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of a final revocation decision." *Gagnon v. Scarpelli, supra* at 781-82.

Because the term "preliminary hearing" has a particular meaning in Pennsylvania criminal law, it will be convenient to refer to the "preliminary hearing" to which a parolee or probationer is entitled as a *"Gagnon* I hearing," and to the second "somewhat more comprehensive hearing" as a *"Gagnon* II hearing."

"At the preliminary [*Gagnon* I] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing." *Gagnon v. Scarpelli, supra* at 786, citing *Morrissey v. Brewer,*

---

4. We note that in *People v. Buford*, 42 Cal. App. 3d 975, 117 Cal. Rptr. 333 (1974), the California Court of Appeals for the First District, Division 1, declined to follow *Gagnon,* on the ground that in *Gagnon,* which originated in Wisconsin, revocation is the function of an administrative agency, whereas in California it is a function of the court. This distinction does not seem to us of any substance, and to rely upon it appears contrary to the conclusion in *Gagnon* that "[p]etitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one." *Gagnon v. Scarpelli, supra* at 782 (footnote omitted).

5. The *Morrissey* two step revocation procedure has been implemented in Pennsylvania in *Commonwealth ex rel. Rambeau v. Rundle, supra* at 19-20, 314 A.2d at 848. *See especially* concurring opinion of Pomeroy, J. *Id.* at 21-25, 314 A.2d at 848-51, delineating the two steps.

*supra* at 487. Thus, the *Gagnon* I hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: the Commonwealth must show probable cause that the violation was committed.

The *Gagnon* II hearing entails, or may entail, two decisions: first, "a consideration of whether the facts determined warrant revocation." *Morrissey v. Brewer, supra* at 488. "The first step in a [*Gagnon* II] revocation decision . . . involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole [or probation]." *Gagnon v. Scarpelli, supra* at 784, citing *Morrissey v. Brewer, supra* at 479-80. It is this fact that must be demonstrated by evidence containing "probative value." *Commonwealth v. Kates, supra* at 118-19, 305 A.2d at 710. "Only if it is determined that the parolee [or probationer] did violate the conditions does the second question arise: should the parolee [or probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Gagnon v. Scarpelli, supra* at 784, citing *Morrissey v. Brewer, supra* at 479-80. Thus, the *Gagnon* II hearing is more complete than the *Gagnon* I hearing in affording the probationer additional due process safeguards, specifically:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) ; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

*Gagnon v. Scarpelli, supra* at 786; *Morrissey v. Brewer, supra* at 489; *Commonwealth v. Kates, supra* at 118, n. 10, 305 A.2d at 709, n.10; ABA Project on Standards for Criminal Justice, Standards Relating to Probation, §5.4 (Approved Draft, 1968). *See also Commonwealth v. Alexander*, 232 Pa. Superior Ct. 57, 331 A.2d 836 (1974) (failure to receive notice of reason for revocation hearing), and *State v. Marlar*, 20 Ariz. App. 191, 511 P.2d 204 (1973) (denial of right of confrontation).

It is important to add, however, that the *Gagnon* II hearing is not to be confused with a trial. The court's purpose is not to determine whether the probationer has committed a crime but whether probation is still (or ever was) "an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti-social conduct." *Commonwealth v. Kates, supra* at 115, 305 A.2d at 708. It follows that probation revocation hearings are flexible, and material not admissible at trial may be considered by the court. *Morrissey v. Brewer, supra* at 489. "The degree of proof necessary for probation revocation is less than that required to sustain a criminal conviction." *United States v. D'Amato*, 429 F.2d 1284, 1286 (3d Cir. 1970). "[P]robation may be revoked on the basis of conduct which falls short of criminal conduct." *United States v. Chambers*, 429 F.2d 410, 411 (3d Cir. 1970). Thus, evidence that would ordinarily be excluded as having been obtained in violation of the fourth or fifth amendment may be admissible. *Commonwealth v. Kates, supra* at 119-21, 305 A.2d at 710. At the *Gagnon* II hearing, the probationer may challenge the probative value of such evidence on other constitutional grounds, as, for example, the right of confrontation, *State v. Marlar, supra*, but if the challenge is not made, it will be held to have been waived, *Commonwealth v. Kates, supra* at 121, 305 A.2d at 711. *See also, Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and *Commonwealth v. Shoemaker*, 226 Pa. Superior Ct. 203, 213, 313 A.2d

342, 348 (1973). Because of the differences between a trial and a probation revocation proceeding, it is not a violation of constitutional rights for the hearing to be held after the arrest but before the trial. *Commonwealth v. Kates, supra* at 115, 305 A.2d at 706. *See also* ABA Project on Standards for Criminal Justice, Standards Relating to Probation, *supra*, §5.3. And, if the probationer is later acquitted of those criminal charges, all factual support of the earlier revocation of probation is not necessarily removed, and the revocation may still stand. *United States v. Chambers, supra* at 411.

### III

It is now in order to examine Pennsylvania practice in the light of *Gagnon v. Scarpelli, supra,* and then to apply the conclusions drawn from that examination to the present case.

Rule 1409 of the Pennsylvania Rules of Criminal Procedure, entitled "Violation of Probation or Parole Hearing and Disposition," provides that after a potential probation violation there must be "a hearing held as speedily as possible at which the defendant is present and represented by counsel and . . . a finding of record that the defendant violated a condition of probation or parole." This rule, which speaks to the final revocation of probation, represents the *Gagnon* II hearing. A *Gagnon* I hearing must therefore be read into the current practice.[6]

Five separate situations may be identified. The first two will arise from offenses triable in the Court of Common Pleas; the next two will arise from offenses initially triable in the Municipal Court of Philadelphia; and the fifth is presented by this case.

---

6. In addition to Rule 1409, the probation revocation section of the new Sentencing Code, 18 Pa.C.S. §1371(d) (1974), must also be read to comply with this opinion.

## A

The first situation is that of the probationer who, before the probation revocation hearing, has been arrested and tried and convicted in the Court of Common Pleas. In this situation there is no need for a *Gagnon* I hearing. The purpose of that hearing—to show probable cause whether probation has been violated—will have been served by the trial. Therefore, only a *Gagnon* II hearing is necessary before probation may be revoked.

## B

The second situation is that of a probationer who, before the probation revocation hearing, has been arrested and after a preliminary hearing pursuant to Pa. R. Crim. P. 120 has been held for indictment and trial in the Court of Common Pleas. Neither is there in this situation any need for a *Gagnon* I hearing. The purpose of that hearing will have been served by the preliminary hearing. As illustrated by *Commonwealth v. Kates, supra,* the probationer may be subjected to a *Gagnon* II hearing before his Common Pleas trial.

## C

The third situation is that of the probationer who, before the probation hearing, has been arrested and tried and convicted of an offense within the jurisdiction of the Municipal Court. In this situation there is no need for a *Gagnon* I hearing. The purpose of that hearing will have been served by the Municipal Court trial. Even though there is an automatic right to appeal and to obtain a trial *de novo* in the Court of Common Pleas, Pa. R. Crim. P. 6006, a *Gagnon* II hearing may be held without awaiting the outcome of that trial.

## D

The fourth situation arises where the probation department, or the judge who placed the defendant on pro-

bation, wishes a probation revocation hearing before the probationer has been tried in the Municipal Court. In this situation it is necessary to hold both a *Gagnon* I and a *Gagnon* II hearing. This is so because there is no preliminary hearing for Municipal Court offenses, Pa. R. Crim. P. 6002 and 6003, and therefore no substitute for the *Gagnon* I hearing will have been provided.

Before proceeding to the fifth situation, it should be noted that there is no requirement that the *Gagnon* II hearing be held before the probationer's trial, either in the Court of Common Pleas (the second situation) or in the Municipal Court (the fourth situation). Indeed it may in many cases be preferable to defer that hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing. Thus, §5.3 of the ABA Project on Standards for Criminal Justice, Standards Relating to Probation, *supra,* provides that "upon a showing of probable cause that another crime has been committed by the probationer [*e.g.,* after a *Gagnon* I hearing] the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge."

## E

Finally, a situation may arise that for some reason does not fit into any of the preceding four, and, as noted, the present case is such a situation.

To recall the facts: Appellant was arrested for an offense within the jurisdiction of the Court of Common Pleas. However, no preliminary hearing was held because the complainants declined to prosecute. In these circumstances, it will be observed, the case does not fall within the first situation described above, for there has been no conviction after a Common Pleas trial. Nor does it fall within the second situation, for there has been no

preliminary hearing. And it does not fall within either the third or fourth situations, for the offense is not a Municipal Court offense. Despite these facts, appellant received only one probation revocation hearing, on March 28, 1974. It would seem, therefore, that the two step revocation procedure required by *Gagnon v. Scarpelli, supra,* has not been followed. The question is whether this initial impression is accurate.

At the single revocation hearing, all of the Commonwealth's evidence was given by Ronald S. Zappen, a State Parole Agent. Mr. Zappen testified regarding appellant's arrest for the theft of the television set, his prior convictions and sentences, and his AWOL status from the Army. Defense counsel objected that this testimony lacked probative value, and that since it was hearsay, it denied appellant the right of confrontation. When the objections were overruled, appellant testified briefly, giving an excuse for his AWOL status, and protesting his innocence of the theft.

This hearing did represent a *Gagnon* I hearing, for the testimony did give the court probable cause to find that appellant had violated his probation. It cannot be maintained, however, that it represnted a *Gagnon* II hearing, for the court did not satisfy the fourth requirement of the *Gagnon* II hearing, that "unless the hearing officer *specifically finds* good cause for not allowing confrontation," "the right to confront and cross-examine adverse witnesses shall not be abridged." *Morrissey v. Brewer, supra* at 489 (emphasis supplied).

*State v. Marlar, supra,* is a similar case. There, as here, hearsay evidence by the defendant's probation officer was received at the revocation hearing over the objection of defense counsel. On appeal it was held that this emasculated " 'the right to confront and cross-examine adverse witnesses.' . . . [and] when a probationer objects to such evidence the trial judge should only allow it when he 'specifically finds good cause for not allowing con-

frontation.' " *State v. Marlar, supra,* 511 P.2d at 206. As the judge had made no such finding of good cause, the case was remanded for a new revocation hearing. Similarly, we must vacate the revocation of probation and sentence in the present case, and remand for a *Gagnon* II hearing.

The judgment of sentence is vacated, and the record is remanded with a *procedendo.*

JACOBS and VAN DER VOORT, JJ., concur in the result.