Commonwealth *v.* Henderson, Appellant.

Argued April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Vincent C. Murovich, Jr.,* with him *Murovich, Reale & Fossee,* for appellant.

*Geoffrey Paul Wozman,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 24, 1975:

Appellant contends that the revocation of his probation did not comport with the due process requirements set forth by the United States Supreme Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756 (1973), and *Morrissey v. Brewer,* 408 U.S. 471, 92 S. Ct. 2593 (1972).

A probation revocation hearing was held on July 3, 1974, to determine whether appellant had violated two conditions of his probation: appellant allegedly changed his address without receiving prior written permission of his probation agent and allegedly travelled outside the Commonwealth without written permission. The Com-

monwealth's evidence was supplied by Leo Lubowy, Jr., a Commonwealth parole officer. Mr. Lubowy's testimony may be summarized as follows: On August 22, 1973, pursuant to a plea bargain, appellant pleaded guilty to possession of narcotics and to a violation of the Uniform Firearms Act. Sentence was suspended on the narcotics charge, but a probation term of two and one-half years was imposed on the firearms violation. On February 28, 1974, appellant requested permission to stay in Passaic, New Jersey, from March 2, 1974, until March 16, 1974. Permission was granted with the specific instruction that appellant notify his probation agent immediately upon his return. When appellant failed to do so, a search was begun.

Appellant's probation agent attempted to contact appellant at his approved residence on three occasions, but each time he observed that the apartment was vacant. The agent did not hear from appellant until his monthly report was received on May 10, 1974. This report listed appellant's residence at a new address in Elizabeth Township. The agent attempted to contact appellant at this address, but was unable to locate the residence. The Chief of Police of Elizabeth Township advised the agent that the address did not exist.

On June 11, 1974, a parole agent was informed by the Elizabeth, New Jersey police that appellant was in their custody. Appellant's probation agent was notified, and on June 12, 1974, he contacted the sentencing judge and a bench warrant was issued. Appellant waived extradition and was returned to Pennsylvania on June 26, 1974, where he was confined to the Allegheny County Jail.

Appellant presented evidence in an attempt to prove that his technical violations were justified. In regard to the charge of changing address without prior permission, appellant testified that he could no longer pay the rent on his present apartment and, therefore, moved to his sis-

ter's residence. He stated that he contacted the authorities and informed them of the change in address. In regard to the charge of travelling outside the Commonwealth without permission, appellant, his sister, and his father, all testified that another of appellant's sisters suffered a medical emergency on June 7, 1974, and that appellant went to New Jersey because his brother-in-law wanted a member of the immediate family to be present.

At the close of the evidence, appellant's counsel requested the court "to consider these violations in a technical light." The judge, who had originally imposed the probation, stated: "Mr. Henderson received the benefit of the indulgence of the Court . . . when the Court accepted a plea bargain . . . [At that time] I indicated . . . my reluctance to accept the plea bargain which did not include some period of incarceration, particularly in view of the second count of the indictment, which involved carrying a concealed deadly weapon . . . . At that time I imposed a term of probation, which probation has been violated and I don't think that the circumstances are such that a further indulgence by the Court is justified." The court revoked the probation and imposed a sentence of one to two years' imprisonment.

We recently undertook a thorough analysis of the process due an alleged probation violator. *Commonwealth v. Davis,* 234 Pa. Superior Ct. 31, 336 A. 2d 616 (1975). The United States Supreme Court has mandated that every alleged parole or probation violator be afforded a two-step procedure: " '[A] parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole [the *Gagnon I* hearing], and the other a somewhat more comprehensive hearing prior to the making of a final revocation decision.' [the *Gagnon II* hearing] *Gagnon v. Scarpelli, supra,* at 781-82." *Commonwealth v.*

*Davis,* supra at 39, 336 A. 2d at 620. At the "prelim-
inary" hearing, the probationer is entitled to notice of
the alleged violations, an opportunity to appear and pre-
sent evidence in his own behalf, a conditional right to
confront adverse witnesses, an independent decision mak-
er, and a written report of the hearing. The actual re-
vocation hearing affords the probationer additional safe-
guards: "Our task is limited to deciding the minimum re-
quirements of due process. They include (a) *written
notice* of the claimed violations of parole; (b) disclosure
to the parolee of evidence against him; (c) opportunity
to be heard in person and to present witnesses and docu-
mentary evidence; (d) the right to confront and cross-
examine adverse witnesses (unless the hearing officer
specifically finds good cause for not allowing confronta-
tion) ; (e) a 'neutral and detached' hearing body such as
a traditional parole board, members of which need not be
judicial officers or lawyers; and (f) a written statement
by the fact-finders as to the evidence relied on and rea-
sons for revoking parole." *Morrissey v. Brewer,* supra, at
488-489. (Emphasis added).

In the present case, appellant contends that the only
hearing he was afforded was the actual revocation hear-
ing conducted on July 3, 1974. In its brief, the Common-
wealth contends that a preliminary hearing was con-
ducted at the Allegheny County Jail on June 28, 1974,
two days after appellant's return to Pennsylvania. There
is no evidence of record, however, to support the Com-
monwealth's assertion. In its opinion,, the lower court
states that "[w]hen [appellant] was returned to this
jurisdiction . . . the sentencing judge set a date for a pro-
bation violation hearing and appellant and his counsel
were informed of the date. The court, in fact, had a tele-
phone conversation with counsel for appellant in which
the subject of setting bond was discussed, as well as the
nature of the probation violation charge."

It is clear that the July 3, 1974 hearing afforded appellant far more due process safeguards than the United States Supreme Court has required for the "preliminary" hearing. Thus, the revocation proceeding represented a *"Gagnon I"* hearing. As the lower court's opinion indicates, however, appellant never received *written* notice of the claimed violations of probation. Thus, the hearing cannot constitute a *"Gagnon II"* hearing. In this regard, the instant case is virtually identical to *Commonwealth v. Alexander*, 232 Pa. Superior Ct. 57, 331 A. 2d 836 (1974), in which we reversed and remanded because appellant did not receive written notification. As was held in *Alexander*, appellant cannot be held to have waived this issue by failing to object at the revocation hearing.

The judgment of sentence is reversed and the case remanded with instructions to hold a new probation violation hearing.

VAN DER VOORT, J., concurs in the result.

WATKINS, P.J., and JACOBS, J., dissent.