375 A.2d 379

**COMMONWEALTH of Pennsylvania**

v.

**Jerry HOLMES, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided June 29, 1977.

---

5. Notes of testimony at trial, charge to the jury, p. 103.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

William T. Nicholas, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant Jerry Holmes pled guilty to burglary and criminal conspiracy on November 30, 1971. He was sentenced to a term of two to twenty-three months imprisonment in the Montgomery County Prison and a consecutive probationary period of one year. After granting credit for time served from September 19, 1971, the lower court noted that appellant was eligible for parole and recommended release by the county probationary officials as soon as possible. On December 3, 1971, appellant was paroled for the remaining twenty-one months of his sentence.

On May 11, 1973, appellant was arrested in Philadelphia County for murder. The Montgomery County Adult Probation Office learned of this arrest and, in August of 1973, issued a bench warrant. Shortly thereafter, the original parole period expired. On April 24, 1974, appellant pled guilty to murder and was sentenced to nine to twenty years imprisonment. The bench warrant was lodged as a detainer with the officials at Graterford State Penitentiary on May

15, 1975. A *Gagnon I* pre-revocation hearing was held on January 23, 1976. Appellant's parole was revoked after a *Gagnon II* revocation hearing held on February 27, 1976, and he was sentenced to serve the twenty-one months remaining on his original sentence.[1]

Appellant now contends that his due process rights were denied because his parole was not revoked within a reasonable time of the violation.[2] We agree and, therefore, must reverse the lower court's order revoking parole.

The United States Supreme Court, in its recent decision in *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), held that postponing a parole revocation hearing until after the parolee has completed the sentence for the conviction which constituted the parole violation does not offend the principles of due process set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

"Petitioner's . . . confinement and consequent loss derives not in any sense from the outstanding parole violation warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. . . . With only a prospect of future incarceration which is far from certain we cannot say that the parole violation warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect. Indeed, in holding that '[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody[,]' *Morrissey, supra,* at 488, 92 S.Ct., at 2603, we established execution of

---

1. The Supreme Court recently granted appellant a new trial on the murder conviction, *Commonwealth v. Holmes,* 468 Pa. 409, 364 A.2d 259 (1976).

2. Appellant also contends that he is entitled to a second *Gagnon II* hearing because the record fails to indicate whether appellant received written notice of the charges against him. *Compare Commonwealth v. Kile,* 237 Pa.Super. 72, 346 A.2d 793 (1975); *Commonwealth v. Alexander,* 232 Pa.Super. 57, 331 A.2d 836 (1974) *with Commonwealth v. Ball,* 242 Pa.Super. 379, 363 A.2d 1322 (1976). Because of our disposition, we need not decide this issue.

the warrant and *custody under that warrant* as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant. (citations omitted)." (emphasis added). *Moody v. Daggett, supra,* 429 U.S. at 86, 97 S.Ct. at 278, 50 L.Ed.2d at 243–44.

The record in the instant case indicates that appellant was not placed in custody under the warrant lodged at Graterford until immediately prior to the hearing held in January of 1976. It, therefore, appears that under *Morrissey* and *Moody, supra,* appellant's due process claim is without merit.

 In *Commonwealth v. Jones,* 242 Pa.Super. 558, 561, 364 A.2d 414, 416 (1976), however, we pointed out that the right to a speedy probation or parole revocation hearing is a part of due process as mandated by our Rules of Criminal Procedure. Pa.R.Crim.P. 1409 [3] provides as follows:

"Whenever a defendant has been placed on probation or parole, the judge shall not revoke such probation or parole as allowed by law unless there has been a hearing held *as speedily as possible* at which the defendant is present and represented by counsel and there has been a finding of record that the defendant violated a condition of probation or parole." (emphasis added).

"The requirement of a speedy hearing embodied in the Rule is nothing more than a restatement of the doctrine developed by our courts that a revocation hearing must be held with 'reasonable promptness' after probation officials know or reasonably should have known of the violation." *Commonwealth v. Lipton,* 238 Pa.Super. 124, 135–36, 352 A.2d 521, 526 (1975) (dissenting opinion of Hoffman, J.). *See also Commonwealth v. Parker,* 244 Pa.Super. 113, 366 A.2d 941 (1976); *Commonwealth v. Duff,* 201 Pa.Super. 387, 192 A.2d

**3.** Rule 1409 became effective on October 23, 1973. It therefore applies to the procedures applicable in the instant case from that date. *Commonwealth v. Jones,* 242 Pa.Super. 561 n. 1, 364 A.2d 414 n. 1 (1976).

258, *rev'd on other grounds,* 414 Pa. 471, 200 A.2d 773 (1964). Where the alleged violation consists of the commission of another crime during the original period of probation or parole, "[i]t is sufficient that the court which imposed the probation should act promptly after the [conviction] . . ." *Commonwealth v. Duff, supra* 201 Pa.Super. at 395, 192 A.2d at 262. This requirement of a reasonably prompt hearing applies irrespective of whether the original parole or probationary period expired prior to the revocation hearing.[4] *Commonwealth v. Darby,* 244 Pa.Super. 331, 368 A.2d 746 (1976); *Commonwealth v. Jones, supra.*

█ The sole question which arises in every case of this type is whether the delay from the date of conviction to the date of parole or probation revocation was reasonable. *Commonwealth v. Lipton, supra; Commonwealth v. White,* 218 Pa.Super. 188, 279 A.2d 768 (1971). In making such a determination, obviously we must consider the length of and reasons for the delay. The length of the delay in the instant case was over twenty months. Although appellant's counsel raised the speedy hearing issue at both the January and February, 1976 hearings, the only explanation for the delay was given by Mr. Albert Parker, Adult Probation Supervisor for Montgomery County, on cross-examination. The entire discussion on the subject proceeded as follows:

"By Mr. O'Connell:

Q. The point I'm getting to is that I saw, Mr. Parker, that there was a date of August of 1973 that [the bench warrant] was issued, August 16, 1973. I'm curious about that.

---

4. When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation, *Gagnon I* hearing, that probable cause exists to believe that a violation has occurred. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). When the alleged violation consists of the commission of a crime, a preliminary hearing in the court of common pleas is a proper substitute for a separate *Gagnon I* hearing. *Commonwealth v. Parker,* 244 Pa.Super. 113, 366 A.2d 941 (1976); *Commonwealth v. Davis,* 234 Pa.Super. 31, 336 A.2d 616 (1975).

A. Yes, Sir. You're right, Mr. O'Connell, it was issued on August 16, 1973 and it was not satisfied. That's the reason. . . .

Q. (Interposing) What do you mean, it wasn't satisfied? You couldn't find the Defendant?

A. No. He was in prison at the time. We just couldn't get to him.

Q. Where was he in prison?

A. Graterford, or, I believe between there and the Philadelphia Detention Center.

Q. Could you explain to me what the reason was for the delay in holding the parole revocation hearing? . . . I'm speaking about the delay from August of 1973 until January of 1976.

A. No, sir. Mr. O'Connell, we have some twenty-six hundred cases and we can't just pick this one out and do it right away.

Q. Well, the Superior Court and the Supreme Court seem to think you should.

A. They might think so, but we can't see it that way."

There are many potential reasons for delay in revocation proceedings. In the past, we have uniformly held that where an appellant successfully conceals the violation or evades arrest, he cannot complain of any consequent delay. *Commonwealth v. Clark,* 225 Pa.Super. 171, 310 A.2d 316 (1973); *Commonwealth v. Ferguson,* 201 Pa.Super. 649, 193 A.2d 657 (1963). Moreover, in *Commonwealth v. Lipton, supra,* we held that certain delays incident to the scheduling of revocation hearings are reasonable. We have also intimated that administrative problems which result when the probation violation consists of a crime committed in a different county would be accepted as reasonable grounds for some delay. *See Commonwealth v. White, supra.* The problem in the instant case is that the record fails to demonstrate adequately either the causes of the delays or the length attributable to each. This is particularly important in this case where the revocation hearing was held more than twenty months after both the date of sentence on the

murder charge and the date of the expiration of the original parole period.

■ The Commonwealth contends that the judgment of sentence should not be reversed because appellant was not prejudiced in any way by the delay. This court recently refused to apply the *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), speedy trial balancing test to parole and probation revocations. *See Commonwealth v. Jones, supra,* (dissenting opinion of Price, J.). In *Commonwealth v. Parker, supra,* however, we pointed out that where, as in the instant case, appellant was in custody because of a second criminal conviction, and not simply because of a prima facie showing of a parole violation, the interest of providing a prompt revocation hearing to avoid the incarceration of an innocent person was substantially reduced. Appellant, therefore, in no way suffered the harm which Rule 1409 is designed to minimize.

> "In addition, appellant was not prejudiced in defending against the charges, especially in so far as he pleaded guilty to the charges upon which the revocation of parole was based. Finally, since the essence of the inquiry at a *Gagnon II* hearing is whether probation has been an effective vehicle to accomplish rehabilitation and a sufficient deterrent to further criminal activity by the probationer or parolee, the mandate of a prompt revocation hearing is as much a directive designed to protect society as it is designed to protect the interests of the accused. *Commonwealth v. Kates,* 452 Pa. 102, 114–15, 305 A.2d 701 (1973)." *Commonwealth v. Parker, supra,* 244 Pa.Super. at 117–118, 366 A.2d at 943–44.

Although the above quoted language from the *Parker* decision can be styled as dicta to that case, it persuasively demonstrates that prejudice to the defendant is a proper consideration in determining whether the Commonwealth has complied with the mandates of Rule 1409. *See also United States ex rel. Burgess v. Lindsey,* 395 F.Supp. 404 (E.D.Pa.1975).

■ We have considered the Commonwealth's argument that appellant was not prejudiced, and although it contains a certain logic, we cannot accept its conclusion. Appellant was in prison because of the murder conviction, not the probation violation. He had not served the minimum sentence on this second conviction and, therefore, had not been precluded from parole. Appellant alleges that the lodged detainer adversely affected both his psychological rehabilitation and his right to participate in certain prison programs. Neither claim asserts an interest protected by due process. *Moody v. Daggett, supra.* That is not to say, however, that there is no prejudice.

The fact remains that the original parole period expired prior to the date of appellant's conviction. Our cases have indicated that a certain amount of prejudice necessarily follows from the mere fact of the expiration of the parole period. Clearly, the prejudice in the instant case was minimal. When we consider this prejudice, together with the extraordinary length of the delay and the utter lack of diligence or explanation by the county probation officials, we find that appellant was denied his right to a speedy hearing.

The order of the lower court revoking parole is reversed.