414 A.2d 663

**COMMONWEALTH of Pennsylvania**

v.

**Oliver RUFF, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Nov. 16, 1979.

David Zwanetz, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

On July 10, 1974, appellant pleaded guilty to possessing a prohibited offensive weapon[1] and was sentenced to a probationary term of three years. Two years later, on August 14, 1976, appellant was arrested and charged with murder,[2] possession of an instrument of crime,[3] and possession of a prohibited offensive weapon. He was found guilty of murder on March 30, 1977, and sentenced to a term of imprisonment of from five (5) to twenty (20) years. On October 5, 1977, a hearing was held at the conclusion of which the Honorable Edward B. Rosenburg found that the murder conviction constituted a violation of appellant's probation. That probation was consequently revoked, and a

1. 18 Pa.C.S. § 908.

2. 18 Pa.C.S. § 2502.

3. 18 Pa.C.S. § 907.

prison term of from one (1) to three (3) years imposed; such sentence to run consecutively to the sentence being served for murder. Appellant now contends that: (1) the *Gagnon* II hearing was fatally defective because the record does not verify his reception of written notice of the claimed violation; and (2) he was not afforded a prompt hearing as mandated by Pa.R.Crim.P. 1409.[4]

Addressing ourselves initially to appellant's second argument, Pa.R.Crim.P. 1409 provides:

"Whenever a defendant has been placed on probation or parole, the judge shall not revoke such probation or parole as allowed by law unless there has been a hearing held *as speedily as possible* at which the defendant is present and represented by counsel and there has been a finding of record that the defendant violated a condition of probation or parole." (emphasis added).

---

**4.** Appellant failed to raise either of these issues at the violation of probation hearing. As to the first, we have previously held that "it would be in derogation of the minimum due process rights of an alleged probation violator to require him to raise lack of notice at a less-than-formal hearing or waive his right to do so." *Commonwealth v. Alexander*, 232 Pa.Super. 57, 62, 331 A.2d 836, 839 (1974). *See Commonwealth v. Spence*, 252 Pa.Super. 341, 381 A.2d 949 (1977); *Commonwealth v. Quinlan*, 251 Pa.Super. 428, 380 A.2d 854 (1977); *Commonwealth v. Stratton*, 235 Pa.Super. 566, 344 A.2d 636 (1975). While it is true that appellant does not claim that he did not receive notice, merely that the record does not verify receipt, we held in *Quinlan* that such a distinction was too fine, and that the dispositive consideration was whether notice had in fact been received. Because we review appellant's claim in this light, it was not previously waived.

The speedy hearing claim is similarly preserved. As was noted in *Commonwealth v. Spence, supra* (majority opinion by Price, J.): "There is no rational basis for distinguishing between the speedy hearing and written notice requirements since they both are required by due process." *Id.* 252 Pa.Super. at 346 n.2, 381 A.2d at 951 n.2.

It should be emphasized, however, that while the waiver rule is abrogated with respect to requirements central to the substance of the revocation hearing, when the probationer fails to complain of a matter peripheral to those proceedings, the claim is waived upon appeal to this court. *See Commonwealth v. Perry*, 254 Pa.Super. 48, 385 A.2d 518 (1978) (failure to argue absence of *Gagnon* I hearing during revocation hearing precludes probationer from raising issue on appeal).

■ In determining whether the hearing has indeed been held with reasonable promptness, the length of time between the conviction and the hearing is not the sole determinative factor. *Commonwealth v. Young*, 262 Pa.Super. 253, 396 A.2d 741 (1978); *Commonwealth v. Diaz*, 258 Pa.Super. 346, 392 A.2d 827 (1978); *Commonwealth v. Waters*, 252 Pa.Super. 357, 381 A.2d 957 (1977); *Commonwealth v. Jones*, 250 Pa.Super. 116, 378 A.2d 481 (1977). Rather, the critical issue is whether the delay was reasonable under the circumstances of the specific case, with such reasonableness being evaluated in the light of three factors: the length of the delay, the reasons for the delay, and the prejudice suffered by the defendant as a result of the delay. *Commonwealth v. Young, supra* ; *Commonwealth v. Waters, supra.* Weighing these considerations in the instant matter, we find little to command appellant's argument.

■ The delay in this case involved a period of approximately six months, *i. e.*, from March 30, 1977, to October 5, 1977.[5] This is not as protracted as others we have found repugnant to Pa.R.Crim.P. 1409, *see, e. g., Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379 (1977) (22½ month delay); *Commonwealth v. Darby*, 244 Pa.Super. 331, 368 A.2d 746 (1976) (8 month delay); *Commonwealth v. Jones*,

---

5. In his brief, appellant states that the violation of probation hearing was not held until "nearly three months after [appellant's] conviction." (Brief for Appellant at 8). Apparently, he is content to compute the delay from the resolution of post-trial motions to the date of the *Gagnon* II hearing. Such largess is unwarranted. We have previously noted that the period of delay is to be measured from the date of conviction, not from the resolution of post-trial motions. *Commonwealth v. Williams*, 254 Pa.Super. 202, 385 A.2d 979 (1978); *Commonwealth v. Jones*, 250 Pa.Super. 116, 378 A.2d 481 (1977).

We also note appellant's complaint that "[d]uring this eleven month interim [between arrest and conviction on the murder charge], the [appellant] surely could have been given a probation hearing and had the matter disposed of." (Brief for Appellant at 8). While it is true, as appellant indicates, that it is *permissible* to hold the probation violation hearing after arrest but prior to trial on the charge alleged to constitute the violation, it is *sufficient* only that the court act promptly following the conviction on that charge. *Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379 (1977); *Commonwealth v. Duff*, 201 Pa.Super. 387, 192 A.2d 258, *rev'd. on other grounds*, 414 Pa. 471, 200 A.2d 773 (1964).

242 Pa.Super. 558, 364 A.2d 414 (1976) (9½ month delay), and is substantially equivalent to delays deemed reasonable in similar circumstances, *see, e. g., Commonwealth v. Williams,* 254 Pa.Super. 202, 385 A.2d 979 (1978) (5½ month delay); *Commonwealth v. Jones,* 250 Pa.Super. 116, 378 A.2d 481 (1977) (6½ month delay); *Commonwealth v. Lipton,* 238 Pa.Super. 124, 352 A.2d 521 (1975) (6½ months); *but cf. Commonwealth v. White,* 218 Pa.Super. 188, 279 A.2d 768 (1971) (5 month delay held unreasonable).

 Further, appellant does not contend that he was substantially prejudiced by the delay. He does not argue, for example, that the delay hindered his ability to raise a defense against the possibility of revocation, or that the Commonwealth intentionally employed dilatory tactics. While appellant does aver prejudice in that the revocation hearing was held some three months subsequent to the expiration of his probationary period, the prejudice was, at most, *de minimus.* Although probation may clearly be revoked after the expiration of the probationary period, *see Commonwealth v. Clark,* 225 Pa.Super. 171, 310 A.2d 316 (1973), it is true that in *Commonwealth v. Holmes, supra,* we noted that "a certain amount of prejudice necessarily follows from the mere fact of the expiration of the parole period." *Id.,* 248 Pa.Super. at 560, 375 A.2d at 382. This prejudice serves to render the delay unreasonable, however, only when it conjoins with other factors, such as the utter lack of diligence by county officials exhibited in *Holmes.* Instantly, probation had expired three months earlier, but appellant would have been imprisoned, in any event, pursuant to the murder conviction. In *Commonwealth v. Diaz, supra,* we stated that "a probationer awaiting his probation violation hearing while being imprisoned for another offense does not suffer much if there is a delay in holding the revocation hearing, for he is already imprisoned." *Id.* 258 Pa.Super. at 350, 392 A.2d at 829. Under all the circumstances, therefore, and absent any allegation that the Commonwealth intentionally delayed the proceedings, the six month delay was not unreasonable.

Appellant's second contention is based on the fact that the record is silent as to whether he received written notice of the charges against him, a fact that the Commonwealth concedes and which our independent review verifies. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court delineated a procedure to be employed in order to ensure that an order revoking probation be based on evidence containing proper probative value. Succinctly, the alleged probation violator is entitled to a preliminary (*Gagnon* I) hearing in order to determine whether there is probable cause to believe a parole violation has been committed, and a second, more comprehensive (*Gagnon* II) hearing designed to render a final revocation decision. *Id.* at 781–82, 93 S.Ct. at 1759. In the event that the alleged violator is arrested and convicted prior to the revocation hearing, as is here the case, the requirement of a *Gagnon* I hearing is obviated. *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975). This does not, however, in any way diminish the due process safeguards necessary in the *Gagnon* II hearing, namely:

" '(a) *written notice of the claimed violations of* [probation or] *parole*; (b) disclosure to [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' " *Gagnon v. Scarpelli, supra*, 411 U.S. at 786, 93 S.Ct. at 1761–62, *quoting Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (emphasis added).

This court has repeatedly emphasized that the Commonwealth must strictly comply with the requirement that notice of the alleged violations be in writing. *See, e. g.,*

*Commonwealth v. Martin,* 241 Pa.Super. 222, 360 A.2d 733 (1976); *Commonwealth v. Stratton,* 235 Pa.Super. 566, 344 A.2d 636 (1975); *Commonwealth v. Davis, supra.* In *Commonwealth v. Spence,* 252 Pa.Super. 341, 381 A.2d 949 (1977), the appellant's probation was revoked as a consequence of his conviction for assault and retail theft. Although not raised at the *Gagnon* II hearing, appellant contended on appeal that he failed to receive written notice of the alleged violations prior to the revocation hearing. The Commonwealth in its brief submitted copies of three notices purporting to demonstrate that the requirement was satisfied. This court declined to consider such "evidence" dehors the record, and remanded the case for the sole purpose of determining whether notice had indeed been given. By way of a caveat, we stated that, "[t]he remand for a limited hearing only applies where the Commonwealth contends that written notice was provided and *where the record indicates that the defendant did not raise the issue of lack of notice before the lower court."* *Commonwealth v. Spence, supra,* 252 Pa.Super. at 346, 381 A.2d at 951 (emphasis in original).

Instantly, the *Spence* criteria permitting a remand for a limited hearing are satisfied. While it is true that the Commonwealth failed to aver that notice had actually been provided, we may infer such a contention from its reference to *Spence* and its request, in the alternative, that the case be remanded for an evidentiary hearing. Nevertheless, we hasten to add that our formulation of the *Spence* standards was not haphazard, and in the future we will hold the Commonwealth to strict compliance with those requirements in cases of this type.

■ Consequently, as no notice appears of record, we must remand for an evidentiary hearing to determine whether appellant received the requisite written notice. If the court finds that proper notice was, in fact, received, the applicable order and sentence shall be reinstated. In that event, the reinstated judgment of sentence shall be appealable limited to the issues resolved by the common pleas court concerning said notice. If the court should find that notice

was not received, then a probation revocation hearing shall be held, preceded by written notice being provided to appellant. *See Commonwealth v. Stratton, supra*; *Commonwealth v. Henderson*, 234 Pa.Super. 498, 340 A.2d 483 (1975); *Commonwealth v. Alexander*, 232 Pa.Super. 57, 331 A.2d 836 (1974).

The judgment of sentence is reversed and the case remanded for further proceedings consistent with this opinion.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

The probation revocation hearing in this case took place over six months after appellant's conviction of murder on March 30, 1977. In evaluating the reasonableness of this delay under Pa.R.Crim.P., Rule 1409, we must focus on three factors: the length of the delay; the reasons for the delay; and the prejudice to the defendant resulting from the delay. *Commonwealth v. Young*, 262 Pa.Super. 253, 396 A.2d 741 (1978); *Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379 (1977); *see Commonwealth v. Smith*, 266 Pa.Super. 234, 403 A.2d 1326 (1979). After purporting to apply this tripartite test to the facts of this case, the majority nevertheless holds that appellant's rights under Rule 1409 were not violated. I dissent. The record in this case contains absolutely no explanation or excuse for the delay. Moreover, appellant was clearly prejudiced by the delay as his term of probation had expired on July 2, 1977, some three months prior to the revocation hearing on October 5, 1977.

The situation presented in this case is indistinguishable from the situation presented in *Commonwealth v. White*, 218 Pa.Super. 188, 279 A.2d 768 (1971). In *White* this court held the five month delay improper where the Commonwealth offered no excuse for the delay and the hearing took place five weeks after the probationary term had expired.

The decision in *White* has not been overruled and not any of this court's decisions since *White* have undercut it in any significant way. This court's decisions in *Commonwealth v.*

*Waters,* 252 Pa.Super. 357, 381 A.2d 957 (1977); *Commonwealth v. Jones,* 250 Pa.Super. 116, 378 A.2d 481 (1977), and *Commonwealth v. Parker,* 244 Pa.Super. 113, 366 A.2d 941 (1976), where delays of, respectively, five, six and one-half, and four months were held not to violate Rule 1409, are all consistent with the decision in *White,* for in each of those cases there was an explanation of the delay and there was no prejudice caused by the delay since the defendant's probationary term had not expired before the revocation hearing. This court's decision in *Commonwealth v. Long,* 264 Pa.Super. 465, 400 A.2d 179 (1979), likewise did not undercut the decision in *White,* for in *Long,* while the period of probation had expired before the hearing was held, the majority held that there was an adequate explanation of the delay on the record. Similarly, the decision in *Commonwealth v. Williams,* 254 Pa.Super. 202, 385 A.2d 979 (1978), where a five and one-half month delay was held not to be improper, does not undercut the decision in *White,* for while in *Williams* there was no explanation of the delay, there was also no prejudice resulting from it, since the probationary term had not expired before the hearing was held. Finally, the decision in *Williams* was followed in *Commonwealth v. Diaz,* 258 Pa.Super. 346, 392 A.2d 827 (1978). In *Diaz,* a majority of this court held that counsel was not ineffective for failing to raise a claim under Rule 1409 where the defendant's probationary period had not expired before the revocation hearing was held and the delay was only four and one-half months. *Diaz* not only does not undercut the decision in *White,* but Judge PRICE, speaking for the majority in *Diaz,* cited *White,* saying:

Our cases have held that something less than actual prejudice may tip the balance in an appellant's favor. Thus in *Commonwealth v. White,* 218 Pa.Super. 188, 279 A.2d 768 (1971), a delay of five and one-half months was held unreasonable where the original period of probation had expired five weeks prior to the revocation. We do not find that the appellant in the instant case was even technically prejudiced as was the defendant in *White.*

*Commonwealth v. Diaz,* 258 Pa.Super. at 350 n.3, 392 A.2d at 829 n.3.

The majority in this case does not try to distinguish *White,* nor could it, for *White* is indistinguishable. In apparent recognition of its inability to distinguish *White* from this case the majority chooses to cite *White* with a prefatory "*but cf.*" Majority at 666. I cannot ignore an en banc decision with such ease. Since *White* cannot be distinguished, and since it controls (or should control) a decision by a mere panel of this court, I should hold that appellant's rights under Rule 1409 were violated by the delay in this case.

The order of the lower court revoking probation should be reversed and the judgment of sentence vacated.