COMMONWEALTH of Pennsylvania,
Appellee,

v.

Eugene Harold SMITH, Appellant.

Superior Court of Pennsylvania.

Submitted June 1, 2004.

Filed Sept. 24, 2004.

Charles Thomas, Jr., Lancaster, for appellant.

Donald R. Totaro, Asst. Dist. Atty., and Charles H. Riech IV, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: FORD ELLIOTT, STEVENS and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 Eugene H. Smith appeals from a judgment of sentence of the Court of Common Pleas of Lancaster County, Pennsylvania. The sentence revoked his probation and gave him a split-sentence of 11 1/2 to 23 months' incarceration, followed by five years' probation. After thorough review of the official record, the appellate briefs, and relevant law, we affirm the judgment of sentence.

¶ 2 Briefly, the facts are as follows. Smith was convicted of theft and sentenced to seven years' incarceration and two years' probation. After completing his prison sentence and just eight days prior to the end of his probation, his urine tested positive for an opiate. Because this first test was non-specific, and the opiate "could

have been anything,"[1] Smith's probation officer sent the urine sample to a laboratory for further analysis.[2] Forty-seven days after Smith's probation expired, the laboratory reported the opiate was heroin. Two days later, the probation officer filed a *capias* alleging a violation. Probation was subsequently revoked, and the current sentence was imposed.

**Discussion**

¶ 3 Smith's challenge to his sentence can be best summed up in his own words:

Even though the violations occurred during the probationary period, the Commonwealth appears to have taken no action that would toll the expiration date. Had the Commonwealth alleged the violations during the probationary term, Defendant would only have been in jeopardy once, albeit for a protracted period of time. By not alleging the violation until well after the probationary terms had expired, the Commonwealth is exposing Mr. Smith to an impermissible second punishment. Therefore, it is unconstitutional to sentence him for violating this term of probation.

Appellant brief at 9.

¶ 4 Thus, we are asked to determine whether the Commonwealth may allege a violation of probation after the probationary sentence has expired.

¶ 5 Smith admits that generally there is no double jeopardy implication involved in revocation of probation situations. *See Commonwealth v. Ortiz*, 745 A.2d 662 (Pa.Super.2000), *appeal denied* 568 Pa. 658, 795 A.2d 973 (2000); *Commonwealth v. Hunter*, 321 Pa.Super. 333, 468 A.2d 505 (1983). However, Smith argues that if protection from double jeopardy is to have

any meaning, the allegation of a violation of a probationary term must be made during the probationary term. While we agree with Smith that there are circumstances where double jeopardy implications may prevent resentencing on a probation violation, we cannot agree that an absolute ban on post-probation violations is required, and do not find that the present circumstances require reversal.

¶ 6 Because there is no case law directly on point, we will begin our analysis with a hypothetical situation. A probationer commits a murder three days before his probation expires. Our hypothetical probationer is not identified as the killer until after the probationary sentence has expired. Under the hard and fast rule proposed by Smith, this probationer could not be charged with a violation of probation, even though a violation was clearly committed. Because no allegation of a violation was filed during the probationary term, any attempt to prosecute the violation would itself represent a constitutional violation. We do not believe double jeopardy was designed to prevent such an occurrence, and find no support for the notion in any prior decisions. Therefore, we reject the absolute prohibition of such proceedings.

¶ 7 We must then look to the particular circumstances of a case to determine the propriety of a post-probation allegation of violation. Looking at the above hypothetical situation, it is clear that the Commonwealth could not have filed an allegation of violation against the probationer because the Commonwealth was unaware of the identity of the murderer. In the present situation, we know the identity of the alleged violator, but are in the odd, and we suspect limited, situation where the alleged

---

1. Trial Court Opinion, p. 2.

2. We note that eating poppy seeds can produce an opiate positive test result. Obviously, eating a poppy seed bagel or hamburger bun is not a prohibited or criminal act that would subject a person to re-incarceration.

violation occurred late in the probationary term and the Commonwealth was initially unsure if a violation had in fact occurred.

¶ 8 Eight days before Smith's probation was to end, a report was received by the probation officer that Smith had tested positive for an opiate, but the opiate was not specifically identified. As noted earlier, many things can produce an opiate positive result, perhaps even eating a poppy seed bagel. Had Smith been prescribed a cough medicine or an analgesic with codeine, he would also have tested positive for opiates. Yet none of these situations would have been grounds for a violation of probation.[3] Rather than begin violation of probation proceedings before it was determined that a violation had actually occurred, the probation officer submitted the urine sample for more exact testing. It was not until the laboratory report came back from this testing, and revealed that the opiate was heroin, that it was determined that a violation had actually taken place. Violation proceedings were initiated within two days of receipt of the report.

¶ 9 Although no case law is on point with the facts presented here, an examination of prior decisions is still informative. In *Commonwealth v. James*, 212 Pa.Super. 5, 240 A.2d 89 (1968), James challenged the authority of the court to revoke probation after the probationary period had expired. This was merely a challenge to the authority of the court and not a specific challenge to the constitutional prohibition against double jeopardy. Our Court stated:

Now that we are faced with this question after more than fifty years' experience with probation, its resolution does not appear difficult. We set forth in *Commonwealth v. Duff*[, 201 Pa.Super. 387, 192 A.2d 258 (1963) ] the reasons which give the right to revoke probation after the expiration of the probationary period for a violation occurring near the end of the period, or for a violation which, because of the defendant's omission to report or other fault, does not come to the court's attention until near the end of the period or after its expiration. The same reasons hold when the probationary period is co-extensive with the period of maximum legal sentence and the court, even though acting promptly, cannot make the necessary investigation and determination and revoke the probation within the probationary period which is also the legal maximum. It may do so thereafter if it acts with reasonable promptness.

*Id.* at 90. (Citations omitted).

¶ 10 Also:

Although probation may clearly be revoked after the expiration of the probationary period, *see Commonwealth v. Clark*,[ 225 Pa.Super. 171, 310 A.2d 316 (1973) ] it is true that in *Commonwealth v. Holmes*,[ 248 Pa.Super. 552, 375 A.2d 379 (1977) ] we noted that "a certain amount of prejudice necessarily follows from the mere fact of the expiration of the parole period." This prejudice serves to render the delay unreasonable, however, only when it conjoins with other factors such as the utter lack of diligence by county officials exhibited in Holmes."

*Commonwealth v. Ruff*, 272 Pa.Super. 50, 414 A.2d 663, 666 (1979). (Citations omitted).

---

**3.** We are aware that some conditions of probation may prevent a probationer from taking a prescription for codeine. There is no evidence that such was the case with Smith, who was on probation for a theft charge, not for a drug offense where such limitations are more common.

¶ 11 In determining that resentencing a defendant for a violation of probation is not, in general, violative of double jeopardy, our Court noted:

> Consistent with the understanding that probation is by nature a conditional sentence, our Sentencing Code provides that "[u]pon revocation the sentencing alternatives available to the court shall be the same as were available at the time of sentencing."

*Commonwealth v. Hunter*, 468 A.2d at 507–08.

¶ 12 Finally, we note *Commonwealth v. Jones*, 437 Pa.Super. 345, 650 A.2d 60 (1994), where our Court determined that Jones was not subject to double jeopardy even though he had successfully completed his Accelerated Rehabilitation Disposition Program by the time his ARD was revoked. The Commonwealth discovered that Jones would have been ineligible for ARD had he told the truth about his criminal past in his application for ARD. On the last day of the ARD Program, the Commonwealth filed a rule to show cause why the ARD should not be revoked, and amended that petition, after the ARD term had expired, to add new charges.

¶ 13 We believe *Jones* provides particular guidance because both ARD and probation are conditional sentences. Jeopardy attaches in both ARD and probation as well. Although the initial revocation was initiated at the end of the ARD term in *Jones*, it was amended post-term. Both the initial charges and the amendments were considered by the courts, and our Court found the amendments to be constitutionally sound.

¶ 14 Given the history cited above, we believe that the proper application of double jeopardy to probation recognizes that revocation of probation is not per se violative of double jeopardy, and given the conditional nature of the sentence, also acknowledges the need for the Commonwealth to investigate a possible violation to be as certain as possible that a violation has occurred. This solution also represents a logical extension of prior case law.

■ ¶ 15 To that end, we hold that the Commonwealth may, under certain circumstances, file allegations of a violation of probation even after the probationary term has expired. The circumstances where this is allowable are limited to such instances where either the Commonwealth cannot ascertain that it was the probationer who committed another offense; the Commonwealth cannot show that a violation has actually occurred (as is the case before us); or the violation has occurred so late in the probationary term that the Commonwealth cannot actually file the proper paperwork in time.[4] In order to balance the defendant's right to be free from double jeopardy with the Commonwealth's right to enforce the conditional nature of the original sentence imposed, the Commonwealth must be given the opportunity to properly identify the violator and/or to properly verify that a violation has occurred.

¶ 16 As noted, a probationary sentence is conditional. The latitude we now provide to the Commonwealth in initiating revocation proceedings is simply a practical recognition that it can take a reasonable amount of time to verify that the conditions of the original sentence have been met. Thus, any reasonable delay in initiating revocation proceedings is not an impermissible double punishment.

---

4. These are the three instances we can initially identify. A case by case analysis may allow for other situations as well.

¶ 17 Here, there was no showing that the Commonwealth delayed the testing of the sample or that the time it took for the sample to be tested was in any way unreasonable. Once the test results were obtained, the Commonwealth promptly acted to initiate revocation proceedings.

¶ 18 We must emphasize that our holding today is not intended to be a carte blanche for the Commonwealth to initiate revocation proceedings whenever it feels like it. Any delay in filing must be reasonable under the circumstances presented. Where the identity of the violator and nature of the violation are known, the Commonwealth is ever under the obligation to proceed with due diligence. If the Commonwealth fails in this obligation and does not seek to initiate revocation proceedings while the probationary term is still in effect, then double jeopardy considerations may be implicated.[5]

¶ 19 Judgment of sentence affirmed.

---

5. Our holding today does not affect prior case law regarding situations where the proceedings are initiated before the probationary term expired, but the revocation hearing is not held until post-expiration.