J-S21011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DESMOND GIBSON | : | |
| | : | |
| Appellant | : | No. 1066 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010010-2015

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED AUGUST 7, 2024**

Desmond Gibson appeals, *nunc pro tunc*, from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following the revocation of his probation.  Gibson entered a negotiated *nolo contendere* plea to robbery (F-1), burglary (F-1), and simple assault (M-2) in December 2017.  Gibson was advised at his initial sentencing hearing that a condition of his probation included no contact with firearms or weapons.  After careful review, we affirm on the basis of the thorough and well-written decision authored by the Honorable Anne Marie B. Coyle.

Gibson's charges stemmed from the beating and robbery of an eighty-year-old victim.  On December 5, 2017, Gibson entered a negotiated *nolo contendere* plea to the above offenses and was sentenced to an aggregate term of 2 to 4 years' state incarceration, followed by 4 years of

special/reporting probation.[1]  The court imposed rehabilitative conditions and awarded credit for time served.

Gibson's original sentencing order lists the conditions placed on his probation as follows:

> To be placed on Probation[—]State (PBPP) Regular Probation[—] for a maximum period of 4 Year(s) to be supervised by State.
>
> The following conditions are imposed:
>
> Drug screens:  To submit to random drug/alcohol screens.  1st positive test results in a violation.
>
> **Other:  Random Home and Vehicle checks for guns and weapons.**
>
> Other:  Dual Diagnosis Treatment.  Comply with all treatment recommendations.
>
> Other:  Upon Parole/Probation continue with outpatient treatment.
>
> Defendant to have Intensive Supervision
>
> Stay Away Order:  To stay away from victims(s) and [C]ommonwealth witnesses.  No Contact[—]direct/indirect/3rd party/social media.
>
> Mandatory Court Costs – Court Costs:  Defendant is to pay imposed mandatory court costs.  Supervision Fees Waived.

*Nolo Contendere* Plea Order of Sentence, 12/5/17 (emphasis added).[2]

Additionally, on August 13, 2018, Gibson signed Parole Board Form PBPP-235,

---

[1] Gibson was sentenced to two concurrent terms of 2-4 years of incarceration, followed by four years of special/reporting probation, on the robbery and burglary charges, and a concurrent period of 2 years of special/reporting probation for simple assault.

[2] On December 15, 2017, Gibson filed a motion to withdraw his guilty plea claiming that after he entered his plea he "expressed his desire to withdraw
*(Footnote Continued Next Page)*

which listed one of the conditions of his probation as follows, "refrain from owning or possessing any firearm or other weapons," and explained that any violation of a condition of probation could lead to its revocation. Commonwealth of Pennsylvania Board of Probation and Parole PBPP-235 Form, 8/13/18, at ¶ 5(b), 2. On June 15, 2019, his maximum parole date, Gibson was released from SCI Chester and began serving his probationary term.

While on probation, on October 13, 2021, supervising parole agents conducted a scheduled home visit of Gibson's residence located at 215 N. Alden Street. During the walk-through of his home, where Gibson lived alone,[3] they observed a small safe under Gibson's bed in his bedroom and a gun box next to the safe. Upon inquiry, Gibson told the agents that the safe

_____

his plea [to counsel] and proceed to trial to establish his innocence." Motion to Withdraw Plea, 12/15/17, at 1-2. On February 9, 2018, the court denied the motion.

[3] Although Gibson's mother owned and had previously lived in the home, she testified at the *Gagnon* hearing that she had moved out of the residence in September 2021 and was living in New Jersey at the time of the probation violation. *See* N.T. *Gagnon* Hearing, 11/4/21, at 41. Moreover, when she and Gibson lived in the home before she moved to New Jersey, she testified that there were no firearms in the home. *Id.* at 42. Agent John Murphy also testified that Gibson told him that his mother was no longer living in the home, that she lived in New Jersey, and that he lived in the house alone. *Id.* at 18.

was empty,[4] that the gun box[5] was for a BB gun, and then led them to another bedroom in the home where they found the BB gun inside a Timberland shoebox on a shelf. The gun resembled a semiautomatic handgun with a working slide. *See* Commonwealth Exhibit 1 (Photo of Gun). Gibson was placed in a transport belt and shackles and transported to Philadelphia County Prison. During transport, Gibson became combative, verbally berated and harassed the agents, and refused to exit the vehicle upon arrival at the county jail, requiring him to be "physically removed [] from the vehicle and escorted [] into [p]rison." Commonwealth of Pennsylvania Parole Board PBPP-257H Form (Supervision History), 10/18/21; *see* N.T. *Gagnon*[6] Hearing, 11/4/21, at 19-20.

Following a *Gagnon* hearing held on November 4, 2021, the court revoked Gibson's probation. On March 29, 2022, the court imposed the instant probation revocation sentence of two concurrent terms of 5 to 10

---

[4] Gibson provided the agents with the key to the safe, which was opened and contained jewelry. *See* Commonwealth of Pennsylvania Parole Board PBPP-257H Form (Supervision History), 10/18/21; *see also* N.T. *Gagnon* Hearing, 11/4/21, at 14.

[5] The gun box was empty. *Id.* at 17.

[6] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

years' imprisonment for robbery and burglary and 1 to 2 years in prison for simple assault.[7]

Gibson filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our consideration:

> (1) Whether the evidence was insufficient as a matter of law to make a determination that [Gibson] was in direct violation of the conditions of his probation when the Commonwealth failed to present evidence of any violation during the revocation hearing, and the initial sentencing court did not advise [Gibson] of all the conditions of his probation at the initial sentencing hearing.
>
> (2) Whether the sentencing court abused its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of [Gibson's] record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors[,] as noted in 42 Pa.C.S.[A. §] 9721 of the Sentencing Code.[8]

---

[7] On August 17, 2022, Gibson filed a timely Post-Conviction Relief Act (PCRA) petition, **see** 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights *nunc pro tunc*, claiming counsel failed to file a requested direct appeal. On March 28, 2023, the court granted Gibson's request and reinstated his direct appeal rights *nunc pro tunc*.

[8] We recognize that the trial court did not reinstate Gibson's post-sentence motion rights *nunc pro tunc*, as counsel did not request such relief in the PCRA petition. **See Commonwealth v. Liston**. 977 A.2d 1089, 1094 (Pa. 2009) (no automatic right to file post-sentence motions *nunc pro tunc* where claim in PCRA petition is counsel failed to file requested appeal). Thus, at first blush it may appear that Gibson has not invoked our appellate jurisdiction to review his discretionary aspect of sentence claim where he must, among other things, properly preserve the issue at sentencing or in a motion to reconsider and modify sentence. **See Commonwealth v. Cook**, 941 A.3d 7, 11 (Pa. Super. 2007). However, the record reveals that on April 7, 2022, Gibson filed a motion to modify his sentence claiming that the court imposed a legally

*(Footnote Continued Next Page)*

Appellant's Brief, at 7.

After reviewing the certified record, the parties' briefs, and relevant case law and statutes, we affirm Gibson's probation revocation sentence on the basis of Judge Coyle's October 6, 2023 opinion. **See** N.T. **Gagnon** Hearing, 11/4/21, at 8 (court reiterating Gibson's probation included condition of "random home and vehicle checks . . . to be conducted for guns and/or weapons"). We instruct the parties to attach Judge Coyle's decision in the event of further proceedings in the matter.[9]

Judgment of sentence affirmed.

_____

excessive sentence that was "disproportionate to the technical nature of the violation as determined by the court." Motion to Modify Sentence, 4/7/22, at 2. However, the trial court never ruled upon that motion. Thus, we will find that he has successfully petitioned this court for permission to appeal the discretionary aspects of his sentence. Nevertheless, his claim is meritless. **See** Trial Court Opinion, 10/6/23, at 14 (court discussing it thoroughly review all relevant sentencing factors and also relied on presentence report and mental health evaluation in fashioning Gibson's probation revocation sentence).

[9] To the extent that Gibson claims a BB gun is not a weapon and, thus, he was not aware that possessing such a gun would violate his probation, we find no merit to that argument. **See Commonwealth v. Ramos**, 920 A.2d 1253, 1260 (Pa. Super. 2003) (BB gun qualifies as deadly weapon, as defined by 18 Pa.C.S.A. § 2301, because it is capable of producing death or serious bodily injury).

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date:   8/07/2024

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CRIMINAL SECTION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0010010- 2015** |
| | : | |
| **v.** | : | |
| | : | |
| | : | **SUPERIOR COURT** |
| **DESMOND GIBSON** | : | **NO. 1066 EDA 2023** |

**FILED**

OCT 6 2023

Appeals/Post Trial
Office of Judicial Records

**OPINION**

**COYLE, J.**                                                        **OCTOBER 6, 2023**

Appellant, Desmond Gibson, as the Defendant in the above-captioned case, seeks review of

the Order and Judgment of Sentence that had been imposed on March 29, 2022, by the Honorable

Anne Marie B. Coyle, presiding as Judge of the First Judicial District of Pennsylvania Court of

Common Pleas Criminal Division, hereinafter referred to as "this Court." Appellant challenges the

discretionary aspects of his sentence following the revocation of his probation period of supervision

due to the possession of a weapon in violation of the Order and Judgment of Sentence.

## I.    FACTS & PROCEDURAL HISTORY

On December 5, 2017, in the midst of a jury trial resulting from the reported beating and

robbery of an eighty-year old man in his bedroom, Appellant entered a negotiated plea of *nolo*

1

*contendere* to Robbery and Burglary, graded as a felony of the first degree and Simple Assault, graded as a misdemeanor of the second degree.[1] The remaining charges were *nolle prossed*. Appellant was immediately sentenced to an aggregate term of two (2) to four (4) years of incarceration followed by four (4) years of probation. Rehabilitative conditions were imposed with credit for custodial time served.

On December 14, 2017, Appellant filed a Writ of Habeas Corpus and on December 15, 2017, filed a Motion to Withdraw Plea of Nolo Contendere. On January 11, 2018, defense counsel requested a forthwith mental health evaluation for competency. On February 9, 2018, the Motion to Withdraw Plea of Nolo Contendere was denied and the original sentence was to remain in place. No appeal was taken.

On or about October 19, 2021, the Court was notified that Appellant had violated the terms of the Order of Sentence. On November 4, 2021, a motion to revoke parole was granted and a presentence investigation and mental health evaluation was ordered. Probation was revoked. On March 29, 2022, this Court revoked Appellant's probation supervision periods, following an evidentiary violation of probation hearing, and imposed an aggregate sentence of five (5) to ten (10) years of incarnation. Credit for custodial time served was accorded. Rehabilitative conditions were imposed, and Appellant was reminded of the consequences of violating conduct. On April 7, 2022, Appellant filed a motion for modification of sentence. No appeal was taken.

On August 17, 2022, Appellant filed a counseled Post-Conviction Relief Act Petition ("PCRA") seeking reinstatement of Appellant's direct appellate rights. On January 31, 2023, Lawrence J. O'Connor, Jr., Esquire, filed an Amended PCRA petition on behalf of Appellant. On

---

[1] 18 § 3701 §§ A1ll - Robbery – Threat Immed Ser Injury (F1); 18 § 3502 §§ A1 – Burglary –

2

March 28, 2023, Appellant's right to appeal *nunc pro tunc* was granted. On April 23, 2023,

Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania. A Statement of Matters

Complained of on Appeal pursuant to Pa. R.A.P. Rule 1925 (b) was ordered, and Appellant filed it

thereafter on May 24, 2023. The transcribed notes of testimony from the violation of probation

hearing were received on September 26, 2023.

## II.  ISSUES ON APPEAL

Appellant raises the following claims verbatim on appeal:

1.  The VOP court abused its discretion by entering a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa. C.S. Section 9721 of the Sentencing Code.

2.  The evidence was insufficient as a matter of law to make a Determination that appellant was in violation of the terms and conditions of his probation. The Commonwealth failed to establish the specific conditions of probations during the revocation hearing. In addition, the sentencing court did not advise appellant of all the conditions of his probation at the initial sentencing hearing.

## III.  DISCUSSION

The scope of appellate review of a sentence that had been imposed following the revocation

of probation is limited to the validity of the revocation proceedings, the legality of the sentence

imposed following revocation, and any challenge to the discretionary aspects of the sentence

imposed. *Commonwealth v. Wright*, 2015 PA Super 116, 116 A.3d 133, 136 (Pa. Super. 2015)

(citation omitted). Imposition of sentences following the revocation of probation is vested within the

sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on

---

Overnight Accommodation, Person Present (F1); 18 § 2701 §§ A – Simple Assault (M2).

3

appeal. An abuse of discretion is more than an error in judgment - a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Colon*, 2014 PA Super 242, 102 A.3d 1033, 1043 (Pa. Super. 2014).

In this Commonwealth, the trial court's common law and statutorily based authority to impose a term of probation has been set forth as follows:

> "Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence of imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed."

61 P.S. § 331.25.

Moreover, Pennsylvania Rule of Criminal Procedure Rule 1409 provides: "Whenever a defendant has been placed on probation or parole, the judge shall not revoke such probation or parole as allowed by law unless there has been a hearing held as speedily as possible at which the defendant is present and represented by counsel and there has been a finding of record that the defendant violated a condition of probation or parole . . ." *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973); *Commonwealth v. Davis*, 234 Pa. Super. 31, 336 A.2d 616 (1975).

When imposing a sentence of total confinement after a probation revocation, the sentencing

4

court shall consider the factors set forth in 42 Pa.C.S. § 9771.[2] *Commonwealth v. Ferguson*, 2006 PA Super 18, 893 A.2d 735, 737 (Pa. Super. 2006). Under 42 Pa.C.S. § 9771(c), a court may sentence a defendant to total confinement after revocation of probation if any of the following conditions exist: (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court. *See also Commonwealth v. Coolbaugh*, 2001 PA Super 77, 770 A.2d 788 (Pa. Super. 2001).

Our appellate courts have repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated: "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d at 1376 (1983) (citing *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); and *Commonwealth v. Burrell*,

---

[2]  § 9771. Modification or revocation of order of probation

(a) General rule. -- The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation. -- The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. *Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.* [emphasis added.]

(c) Limitation on sentence of total confinement. – The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

      *          *          *          *

1974, Dec. 30, P.L. 1052, No. 345, § 1, effective in 90 days. Renumbered from 18 Pa.C.S.A. §1371 by 1980, Oct. 5, P.L. 693, No. 142, § 401(a), effective in 60 days. 42 Pa.C.S.A. § 9771. *See also* Pa.R.Crim.P. 1409.

497 Pa. 367, 441 A.2d 744 (1982)).

Importantly, the Superior Court explained that "it is clear that the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed. Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity." *Commonwealth v. Foster*, 214 A.3d 1240, 1251 (Pa. 2019); *See e.g., Brown*, 469 A.2d at 1376 (holding that the Commonwealth cannot establish probation violation where defendant was acquitted of the charges that constituted the alleged VOP). A court never reaches this question unless there is a violation of a specified term of the probation order, or the probationer commits a new crime. *Foster,* 214 A.3d 1240, 1251.

Furthermore, the Commonwealth need only demonstrate that the probationer had violated a specified term of probation or committed a new crime by a preponderance of the evidence. *Commonwealth v. A.R.,* 2010 PA Super 4, 990 A.2d 1 (Pa. Super. 2010) (considering the positive drug tests and Appellant's concession to the technical violations, the evidence was enough to support the revocation sentence imposed by the court); *See Young v. Com. Bd. of Probation and Parole,* 487 Pa. 428, 437, 409 A.2d 843, 848 (1979) (holding that the Board properly denied a parolee credit on his sentence for time spent on parole where his "street time" was marked with delinquency and failure to comply with conditions of parole).

Finally, under Pennsylvania law, a challenge to the validity of a sentence is a challenge to its legality. *Commonwealth v. Isabell,* 467 A.2d 1287 (Pa. 1983); *Commonwealth v. Quinlan,* 639 A.2d 1235 (Pa. Super. 1994), *appeal granted,* 659 A.2d 986 (Pa. 1995), *appeal dismissed as improvidently granted,* 675 A.2d 711 (Pa. 1996). If a court does not possess statutory authorization

6

to impose a particular sentence, then the sentence is illegal and must be vacated. *Commonwealth v. Thier*, 663 A.2d 225, 229 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996). If no statutory authorization exists for a particular sentence, then that sentence is illegal and subject to correction. *Thier, supra.* An illegal sentence must be vacated. *Commonwealth v. Kratzer*, 660 A.2d 102, 104 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996) *citing Commonwealth v. Lee*, 638 A.2d 1006 (Pa. Super. 1994).

In the instant matter, Appellant's claims that the Commonwealth had failed to establish the specific conditions of probation and that the Court had failed to advise Appellant of any conditions at the original sentencing hearing is belied by the record. Prior to hearing the testimony of Supervising Parole Agent 2 Alexa O'Connell and Parole Agent 2 John Murphy concerning the salient events which had formed the basis of the revocation hearing, this Court summarized Appellant's history before the Court and recited the previously imposed conditions of probation from the initial 2017 Order of Sentence:

> **THE COURT**: Can I just do the summary, and I'll get to it, because I like to be complete.
>
> The first reported difficulties that I received reference to a transmittal dated April 3rd, 2019, while Mr. Gibson was still in custody at Somerset. In summary, while at Somerset, he incurred an assaultive misconduct during confinement. I've reviewed the attached misconduct report in reference to the altercation that was reportedly observed by COs with respect to Mr. Gibson's physical fight with another inmate. It was also further reported thereafter after he was penalized for that misconduct while in custody, initially he had been unable to obtain the approved home plan with his mother, and the recitation included mom -- who I believe is the individual who is reported to be mom outside -- expressed concerns because I believe she said she had a firearm in the home and didn't want to give up the firearm in the home.
>
> Going back, pursuant to the negotiated conditions for the nolo contendere plea that was entered before This Court and accepted on December 5th, 2017, the defendant was sentenced: Count 2, robbery, under CP ending in 10010-2015, to

7

that count, two years to four years State form of the confinement followed by four years of reporting probation. He was to be accorded credit for time served as calculated by the Philadelphia prison authorities. He was not deemed Triple RI or boot camp eligible, and *he was directed* to obtain vocational training and have *no contact whatsoever with any illegal narcotics and/or weapons*. First positive test was to result in a violation hearing.

The random home and vehicle checks were to be conducted for guns and/or weapons, and he was *specifically directed* by myself, given the severity of the event that was at issue, *not to have any contact* with same either in his home or in a car. Dual diagnosis treatment in reference to his reported mental health and drug and alcohol difficulties were to be complied with as well as any treatment recommendations.

On probation or parole, he was to continue with his outpatient treatment and was to be intensely supervised. He was to have no contact with the elderly victim at issue or Commonwealth witnesses. That meant no direct contact, no indirect contact, no third party, no social media contact in reference to same. Mandatory fines and costs.

Count 3, burglary, also a felony of the first degree. Same sentence. Period of confinement to run concurrently with the period of confinement of Count 2. Period of probation of four years was to run consecutive to the period of confinement, but concurrently to the first period of probation on Count 2.

Count 6, however, simple assault. Two years of reporting probation was to run consecutively to any period of confinement, but concurrently to the other periods of probation.

Now, my notes reflect that *I was very specific with Mr. Gibson as to what I expected, and what I expected was to have no contact whatsoever with any weapons* or illegal narcotics. I was also disappointed to see that while in custody, the nature of the misconduct led to an unfavorable review when up for parole. In fact, the Board Of Probation And Parole rendered the following decision on July 16th, 2018, that upon review, he failed to demonstrate motivation for success.

The evaluation's assessment reflected he was a risk to the community. He was directed to participate in additional institutional programs. He refused to accept responsibility for the offenses committed. He continued to exhibit a lack of remorse for the offenses committed. There was a negative recommendation by the trial Judge -- that would be me -- and he had a negative recommendation made by the prosecuting attorney, and he was directed to serve the unexpired maximum portion of his sentence until June 15th, 2019.

8

Thereafter, Mr. Gibson was assigned to the intensive form of supervision. His release date was June 17th, 2019. It says here in this summary that his actual release was June 15th, 2019. His maximum supervision date would be, respectively, it was accorded on the two and four years, 2021 of June and 2023 of June 15th. So, upon release, he would have been under my supervision and was assigned to the State, per my direction, for intensive supervision. As part and parcel my understanding of the rules conditioning probation and parole, specifically, when one is assigned and accepted for that form of State supervision, there is an acknowledgement by Mr. Gibson, and attached thereto, I read his acceptance of those conditions. Those conditions include Section 5: Refraining from owning or possessing any firearm or other weapons and refraining from assaultive behavior and abstaining from any unlawful possession of illegal narcotics in any way, shape or form, and compliance with special conditions imposed by this Court, which were reiterated and accepted by him; in fact, I'm looking at his signature, which was witnessed, of the defendant, dated August 13th, 2018.

So, then we proceed forward to the report dated October 14th, 2021, and I'm looking at the report signed by Agent Alexa O'Connell, and it looks like a supervisor by the name of Alicia Calvin and concurred by Supervisor Michael F. Micciche, and included thereto, the warrant to commit and detain Mr. Gibson, which was conducted.

Before I read the recitation, I'll, and Agent Murphy, can you step outside for a moment so I can read it into the record without any argument of violation of sequestration?

This Court has reviewed the summary of adjustment that reflects October 14th, 2021, notation by Agent O'Connell: Offender Desmond Gibson was released from SCI Chester on June 15th, 2019, after serving a two-to-four-year sentence on robbery, burglary and simple assault. The offender is serving four years of consecutive special probation for his robbery and burglary convictions, which was to begin June 15th, 2019, and on June 15th, 2019, he was paroled to mother's residence of to 215 North Alden Street, Philadelphia Pennsylvania 19139, where he had maintained a residence.

Offender receives SSI, SSDI for diagnosed mental health disabilities (Schizophrenia and ADHD). Offender is actively enrolled in outpatient mental health treatment with Consortium.

October 13th, 2021, a scheduled home visit was conducted to offender's approved residence of 215 North Alden Street. A walk-through of the offender's bedroom was conducted. The defendant kicked clothes towards under the bed. Agent Murphy then noticed a small safe if plain view under the bed.

9

Offender then handcuffed for the agent's safety. While accessing the safe, Agent Murphy located a small gun box next to the safe under the bed. The offender provided the key to the safe, which contained jewelry. The gun box found under the bed was empty. The offender reported the gun box was for a BB gun.

When offender was questioned about the whereabouts of BB gun, offender led agent to the rear bedroom of the second floor the residence. Offender informed agent that the BB gun was located in a Timberland shoe box on top of the shelf. Agent located that look-alike firearm in a shoe box as reported by the offender. Offender was placed in transport belt and shackled by agents and transported to Philadelphia County prison.

During the transport, offender called agents, quote, F-U-C-K-I-N-G pigs, end quote, on multiple occasions. offender then called this agent -- I'm assuming Agent O'Connell -- quote, pussy as pig. Upon arrival to the Philadelphia County prison, offender continued to scream at agents, stating that agents were, quote, F-U-C-K-I-N-G with him and refused to exit the vehicle.

Agents then attempted to verbally de-escalate offender while giving the verbal commands for offender to exit the vehicle. Offender stated, "You'll have to remove me then."

Agent then physically removed the offender from the vehicle and escorted him into Philadelphia County prison.

Okay. So let's call Agent Murphy. - - -

(N.T., 11/4//2022, pp. 7-15).

As shown above, specific conditions of probation had been amply provided to Appellant. This argument fails. *See also December 5, 2017 Order of Sentence.*

Appellant also complains that the evidence was insufficient as a matter of law to support a finding that Appellant had violated the terms and conditions of his probation. Appellant contends that there is insufficient evidence to establish any violation of probation. This claim is equally meritless. Appellant's possession of the recovered gun constituted sufficient evidence to convince the Court that Appellant violated the terms of not only this Court's direct condition that he was not

10

be in possession of a gun, including in a house or a vehicle, but he also violated the terms of his State supervised intensive probation.

In reviewing the sufficiency of evidence, an appellate court considers "whether the evidence presented at trial was sufficient to establish all elements of the crime beyond a reasonable doubt." *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super. Ct. 2010). The appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. *Id.* The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Feliciano*, 2013 PA Super 117, 67 A.3d 19 *quoting Commonwealth v. Stokes*, 2011 PA Super 261, 38 A.3d 846, 853-854 (Pa. Super. 2011) (internal citations and quotations omitted).

Here, Agent John Murphy testified that he and Agent Alexa O'Connell had been conducting a standard home search of Appellant's property at 215 North Alden Street in the City and County of Philadelphia on October 13, 2021. They exchanged normal dialogue and had asked routine questions concerning police contact, drug use, weapons, and similar things of that nature with Appellant. As part of the home visit, they were going to obtain a urinalysis sample to check Appellant for any drug use.

When Appellant claimed a suspicious inability to urinate, the agents continued to talk to him and encouraged him to drink some water. As they were standing in the hallway near Appellant's bedroom, Agent Murphy noticed what appeared to be a safe tucked under the bed. After they were able to get the sample, Appellant was handcuffed and asked if there were any guns or drugs in that

11

safe. Appellant remarked that there were no guns in the safe. However, once the safe was opened, Agent Murphy noticed an empty gun box next to the safe. Upon inquiry, Appellant directed Agent Murphy to the back bedroom where he had located the gun. (N.T., 11/4//2021, pp. 16-24). See Court's attached Exhibit "1." Agent O'Connell testified similarly and credibly. (N.T., 11/4//2021, pp. 48-54). Appellant lived alone. He was unequivocally in possession of a gun/weapon which had been specifically prohibited as reflected in the acknowledged conditions of probation despite Appellant's baseless argument to the contrary.

Appellant also argues that the Court abused its discretion by imposing "a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa. C.S. Section 9721 of the Sentencing Code." The transcribed record refutes these contentions and reflects this Court's succinctly stated review of all relevant factors in fashioning Appellant's sentence.

Appellant debated the discretionary aspects of the resulting sentence by broadly averring that the sentence had been excessive and had not been consistent with the gravity of Mr. Gibson's violation, the need for public protection, or his needs for rehabilitation Appellant's complaints however amount to mere unsupported dissatisfaction with the sentence. His arguments ignore the ample recorded evidence of this Court's detailed description of the myriad forms of Appellant's violating behavior. Moreover, the resulting Order and Judgements of Sentence had been reasonable and imposed after thorough review of all relevant sentencing factors.

> **THE COURT**: Okay. Well, thank you.
> Mr. Gibson, first of all, as to the testimony that this gun that you used to have --
> also, that's quite different than what your mom said, but I won't bring that up right
> now -- but the exhibit that I have that I marked into evidence reflects a firearm --

12

what appears to be a firearm and it appears to be a somewhat sophisticated type with a laser focus and a slide going back that I've marked and I'll move that evidence again, because there's been multiple references on your behalf that, oh, it's just a BB gun, it's not that big of a deal, it's no big thing, it's not really a weapon. Oh, yes, it is. Yes, it is.

And I dare say that if this was pointed at somebody, they would think that they were faced with a deadly weapon and potentially going to die and that's what it looks like and that is directly -- directly defiant of my order of sentence, because the original order of sentence that was negotiated mercifully on your behalf had to do with your beating of a 80-some year old man in his home and but for his physical condition you were looking at a potential conviction of something that would send you upstate for many years to come, not the negotiated sentence of two to four, plus probation that you received.

**I was very specific with you, Mr. Gibson, because I was very concerned about your potential for violence in the future. I still have that concern, in fact, more so.** I did not find the testimony that was proffered before me on your behalf at the time of this violation to be credible. I still don't. I note also that you directed the agents where the gun was. If you didn't know it was there, how could you do that? Be that as it may, maybe my memory is off on that. It doesn't matter to me.

In response it was recorded how you conducted yourself potentially violently and threatening to the agents that were dealing with this issue when they went -- right after they went to your house at 215 North Alden Street.

In addition, due to the severity of the charges for which you were originally sentenced, it is prohibited to have weapons and it was specifically prohibited by my order of sentence, so the gun next to the safe under your bed and the key to the safe containing the jewelry, the gun box was empty under the bed. You said, oh, well, that's for the BB gun.

You lead them to the rear bedroom to the second floor of the residence where you informed them that the BB gun, quote, was in a Timberland shoebox on the top of the shelf, so much for not knowing about it.

The screaming at the agents that you did in response indicated to this Court that contrary to your promises at the time you were originally sentenced you still have what I'm viewing as a dangerous propensity for violence.

I also reviewed -- in addition to the mental health and presentence investigative report, I reviewed the supervision history of your time period while under my sentence both in the original periods of confinement, the difficulties that led to your parole being denied because you were fighting and combative, that the

13

history of difficulties and violations dealing with you before you got to my probation.

Now, understand, that's not a violation before me and I'm clear on that, but when I look at someone's progress or lack thereof in the past, it's concerning to me. It's very concerning to me, Mr. Gibson, because I can still see Mr. Cantor's face of which I have a picture of what you did to him back in the day to an old man. I will get my hands on it in a second.

So, I reviewed your entire progress history as discussed before and as recorded in the transmittal letters while you were on special probation, which is intensive in nature. I do see some positives that have been referenced, but, you know, you signed off on the acknowledgement that you knew you couldn't have any weapon as early as August 13, 2018.

Okay. So, in summary, I have also noticed in your presentence investigative report what efforts were made when you were much younger to try to rehabilitate you. Okay. There is a need here to address dual diagnosis difficulties. It's going to be ongoing, Mr. Gibson. In the future, not just right now, you have to take your medicine.

You have to continue to stay in treatment. You have to continue with anger management counseling. You have to abide by the rules and regulations to the letter, because if you don't someone else is going to get hurt and the explosions for lack of a better term of your temper worry me. So, I don't treat this as a minor technical violation. In my mind, this is a major problem.

(N.T., 3/29/2022, pp. 14-19).

Contrary to Appellant's claims, this Court had recited on the record, an intensely thorough review of all relevant sentencing factors and provided supportive cogent reasoning. The evidence introduced at the hearings unequivocally buttressed the cited rationale for the Order and Judgement of Sentence. Appellant's presentence investigative reports and mental health assessment were fully incorporated during sentencing proceedings, including Appellant's criminal history and behavior patterns of violations under the supervision of this Court.

Upon sentencing following revocation for probation, the trial court is limited only by the maximum sentence that could have been imposed at the time of the issuance of the probationary

14

sentence. *Commonwealth v. Coolbaugh*, 770 A.2d 788, 792 (Pa. Super. 2001) It is common knowledge that the revocation sentence may not exceed the statutory limits of the originally imposed sentence, including allowable deductions for custody time served. Id.

If mathematic calculations serve this Court correctly, in this Commonwealth, the maximum penalty that had been permitted by statute for Robbery and Burglary permitted imposition of state supervised confinement totaled twenty (20) years for each offense. The actual aggregate sentence that had been imposed after full and fair hearings was for a period of confinement an aggregate term of ten (10) years of confinement, with credit for time served. Hence, Appellant had been properly sentenced well under the maximum period legally allowed. Each respective sentence allotted to each offense had also been imposed well within the statutory parameters. Therefore, Appellant has not borne the burden of establishing that an illegal sentence had been imposed. There had been no demonstration that this Court had abused its discretion in any manner.

Following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence of total confinement. The record as a whole, however, must reflect the sentencing court's consideration of the facts of the crime and character of the offender. *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010). Also, "(w)hen a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Commonwealth v. Baker*, 72 A.3d at 663 (citing *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006)

> "In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those

15

considerations along with the mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement by indicating that he or she has been informed by the presentence report; thus, properly considering and weighing all relevant factors."

*Fowler*, 893 A.2d at 767-68 (citing *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004) (citations omitted).[3]

In short, the transcribed record explicitly demonstrated this Court's adherence to the tenants of 42 Pa.C.S.A. § 9721(b) and its progeny. Prior to imposition of sentence, clear and cogent reasons had been recited in painstaking detail. Those reasons incorporated thoughtful consideration of all relevant sentencing factors including, but not limited to, review of presentence investigative and mental health reports, the serious nature of Appellant's prior convictions, prior criminal history, biographical and familial circumstances, and the continued defiance of supervision conditions.

The cumulative evidence that had been introduced at the evidentiary and sentencing hearings supported the period of confinement because Appellant had copiously confirmed the lack of amenability to community supervised probation. Rather, Appellant's reported actions had revealed that a viable and continuing a threat to the safety of our community and was at high risk for recidivism. Appellant's arguments lack any legal or factual merit because the imposed Orders and Judgements of Sentence in the above-captioned case had constituted a reasonable exercise of judicial sentencing discretion.

## IV. CONCLUSION

In summary, this Court has carefully reviewed the entire record and found no harmful,

---

[3] *See Commonwealth v. Randy Glober*-Superior Court I.O.P. 65.37, No. 3635 EDA 2018) (supporting adopted language and rationale recited in Non-Precedential Decision,

prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief.

For the reasons set forth above, the Orders and Judgments of Sentence should be affirmed.

BY THE COURT:

ANNE MARIE B. COYLE, J.