J-S03038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE TYREIK CHARLES DUNN | : | |
| | : | |
| Appellant | : | No. 1120 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 23, 2025
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000501-2004

BEFORE: DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: JUNE 17, 2026**

Andre Tyreik Charles Dunn ("Dunn") appeals from the judgment of sentence imposed following the revocation of his probation ("VOP"). We affirm.

By way of background, the underlying convictions arose in 2005, when a jury found Dunn guilty of one count of possession of drug paraphernalia and two counts each of possession of a controlled substance and possession with intent to deliver a controlled substance[1] ("PWID"). The trial court imposed an aggregate sentence of three to six years' imprisonment, followed by three years' probation.

Because Dunn had other criminal matters, his probationary term did not begin until December 2021, with an anticipated termination date in December

---

[1] *See* 35 P.S. 780-113(a)(16), (30), (32).

2024. In February 2024, the Commonwealth filed a motion to issue a bench warrant and to declare Dunn an absconder, citing his alleged failure to report to his probation officer. On March 1, 2024, the trial court granted both requests. The next entry on the trial docket appeared eight months later, on January 16, 2025, when the trial court lifted the bench warrant.[2] In the interim, officers arrested Dunn at his residence on May 16, 2024.

_____

[2] We observe the trial docket does not reflect that the trial court conducted a hearing upon Dunn's arrest pursuant to the bench warrant. **See** Pa.R.Crim.P. 150(A)(1), (5)(b), (7) (providing that: (1) when a defendant "is arrested pursuant to a bench warrant, he or she shall be taken without unnecessary delay for a hearing on the bench warrant;" (2) the defendant "shall not be detained without a bench warrant hearing . . . longer than 72 hours;" and (3) "[i]f a bench warrant hearing is not held within [seventy-two hours], the bench warrant shall expire by operation of law"). Dunn, however, has raised no claim regarding Rule 150, and that issue is not before us.

We further note that Dunn appeared *pro se* at the January 16, 2025 proceeding to lift the bench warrant. The docket does not indicate whether a waiver-of-counsel colloquy occurred. **See Commonwealth v. Forrester-Westad**, 282 A.3d 811, 816 (Pa. Super. 2022) (stating that the right to counsel is "guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution," and "this Court has a duty to review, *sua sponte*, whether a defendant waived his or her right to counsel knowingly, voluntarily, and intelligently before proceeding in every critical stage of a criminal proceeding").

Additionally, the Honorable Christopher Hobbs presided over this hearing to lift the bench warrant. The record reflects that Judge Hobbs previously represented Dunn in connection with the underlying 2005 convictions and direct appeal, and Dunn previously filed ineffective assistance of counsel claims against him in post-conviction proceedings. At the January 16 hearing, Judge Hobbs acknowledged that prior representation. However, Dunn has not raised any claim concerning his *pro se* status at the hearing, nor Judge Hobbs' recusal, and another judge conducted the revocation proceedings presently under review.

On January 27, 2025, eleven days after the lifting of the bench warrant, the Commonwealth filed a motion to revoke Dunn's probation.[3] It alleged that: (1) in August 2023, Dunn pleaded guilty to possession of a small amount of marijuana and driving while his operating privileges were suspended or revoked; (2) in November 2023, Dunn incurred new drug and firearms charges, which were pending; and (3) following these new charges, Dunn's probation officer, Carla Smith ("PO Smith") attempted to locate Dunn at his residence, Dunn failed to report the following day as requested, and the trial court thus declared Dunn an absconder.

Dunn, now represented by counsel, filed a motion to dismiss the VOP motion. Dunn averred, *inter alia*, that: (1) there were "113 days from August 8, 2023, the day he plead[ed guilty] to charges [to] November 28, 2023, the date he was declared an absconder;" (2) 265 days had passed "from May 16, 2024 [to] February 5, 2025, [when] he was arrested [to when the VOP motion] was first listed for a hearing;" and (3) there was no reasonable explanation for this delay. Motion to Dismiss, 2/19/25, at unnumbered 2.

On May 23, 2025, the trial court conducted a VOP hearing. At this time, Dunn was free on bail. First, the court denied Dunn's motion to dismiss, after hearing argument from both parties as to the alleged delay between Dunn's new charges and the Commonwealth's filing of the VOP motion.

---

[3] By this time, the original termination date of Dunn's probationary term had passed.

The trial court then heard the following evidence on the merits of the Commonwealth's motion to revoke. First, PO Smith testified to all of the following. She assumed supervision of Dunn's probation shortly after Dunn's November 2023 charges and the issuance of an arrest warrant for him. Dunn failed to report the new charges to the probation department, as required. On November 27, 2023, PO Smith went to Dunn's house, but he was not home. PO Smith thus left a card, directing Dunn to report to the probation department the next morning. Dunn failed to do so, and she "turned . . . over" his case to the Fugitive Apprehension Team to apprehend Dunn. N.T., 5/23/25, at 9. Meanwhile, the Commonwealth filed the motion to declare Dunn an absconder. PO Smith did not attempt again to make contact with Dunn. On May 16, 2024, Dunn "was apprehended" at his home. *Id*. at 14.

The Commonwealth also called York City Police Officer Tyler Harris ("Officer Harris"), who testified to the following about Dunn's November 2023 charges. Officer Harris had stopped a vehicle owned and driven by Dunn's girlfriend; Dunn was the front seat passenger. During a subsequent search of the car, the police recovered: a handgun, with five rounds in the magazine, under the front passenger seat, where Dunn had sat; (2) a fanny pack containing two baggies of thirteen grams of methamphetamine and one baggy of five and three-quarters grams of crack cocaine, on the rear left seat, under a man's jacket; and (3) "a partially smoked blunt containing marijuana" and a baggy containing marijuana. N.T., 5/23/25, at 19-20, 26. Officer Harris

- 4 -

opined that "only the passenger could reach" the fanny pack on the rear left seat. *Id*. at 25. The Commonwealth charged Dunn with drug and firearms offenses.

Dunn testified in his defense to the following. He did not know that PO Smith was his assigned probation officer and he did not receive a card directing him to report. Instead, Dunn's "parole agent at the time was Officer Quentin Jurista" ("PO Jurista"), who visited him every month. N.T., 5/23/25, at 30. At the time of an earlier vehicle stop, which resulted in the August 2023 guilty plea to other charges, Dunn sent a text message to PO Jurista "letting him know [he] was stopped."[4] *Id*. at 35. PO Jurista "called [him] down to the office," Dunn complied, and the officer gave him a written warning. *Id*. at 36. Dunn thus believed the "situation was taken care of" and he was not "hiding from anyone." *Id*. at 37. On cross-examination, Dunn acknowledged that he had not seen anyone from his parole office in the period between his November 2023 drug and firearms charges and his May 2024 arrest on the bench warrant. With regard to the new charges, Dunn maintained his innocence.

The trial court found Dunn in violation of his probation and thus revoked his probation. At the same hearing, the court imposed the probation

---

[4] The Commonwealth attempted to ask PO Smith about these earlier charges that resulted in the August 2023 plea. However, after the trial court sustained a hearsay objection, the Commonwealth did not present any competent evidence of this criminal case. *See* N.T., 5/23/25, at 10.

- 5 -

department's recommended sentence of nine to thirty-six months' imprisonment. Dunn did not file a post-sentence motion.

Following the reinstatement of his direct appeal rights, Dunn filed a timely notice of appeal and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The Commonwealth has not filed a brief.

Dunn presents five issues for our review:

I.   Did the trial court err in allowing the Commonwealth to offer testimony regarding the violations in paragraphs 2, 3A, 3B. and 4, as more than 120 days had passed since knowledge of the alleged violations as well as knowledge of . . . Dunn's whereabouts since he has been incarcerated for (over) 265 days[?]

II.  Did the trial court err with regard to violations 5A and 5B, by permitting the Commonwealth to present evidence or testimony as it has also been more than 120 days since . . . Dunn's preliminary hearing on May 16, 2024[?]

III. Did the trial court err in finding that the evidence presented at the revocation hearing was legally insufficient [*sic*] to support the violations and revocation of . . . Dunn's probation when it did not show that . . . Dunn was ever notified of the change in his probation officer and . . . Dunn presented sufficient evidence to overcome any preponderance of evidence from the Commonwealth regarding the new weapons and drug charge[?]

IV.  Did the trial court err in violating . . . Dunn's due process rights as he was never given notice of his violations in accordance with **Commonwealth v. Perry**, 385 [A.2d] 518 [(Pa. Super. 1978)?]

V.   Did the trial court err in that . . . Dunn's sentence was illegal as it was in excess of that allowed by 42 Pa.[C.S.A.] § 9771[?]

Dunn's Brief at 3 (unnecessary capitalization omitted).

Preliminarily, we note that although Dunn presents five issues in his statement of questions involved, the argument section of his brief, which spans three and one-half pages, consists of just one main discussion. Although his statement of questions involved purports to challenge the sufficiency and weight of the evidence supporting the findings of a VOP, Dunn presents no argument or law on this claim. Accordingly, we deem he has waived this challenge. **See** Pa.R.A.P. 2119(a) (requiring the argument to "be divided into as many parts as there are questions to be argued[] and shall have at the head of each part[,] in distinctive type[,] the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); **see also Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020) (noting that we may apply Rule 2119(a) "to find waiver for [the] failure to develop a meaningful argument with citation to relevant, legal authority").

Dunn's remaining arguments are truncated, as they at times lack factual context, citation to the record, and legal support. By way of example, Dunn argues he was "awaiting trial on the [November 2023 charges and] could have bailed out, except for this [VOP] hearing, so it has prejudiced his liberty as well as future sentencing." Dunn's Brief at 11. However, at the VOP hearing, Dunn testified, seemingly inconsistently, that he was free on bail. **See** N.T., 5/23/25, at 34. Nevertheless, as we may discern the gist of these arguments,

we do not find waiver for vagueness, and we address his claims in the order presented.

First, Dunn generally avers that this Court should "dismiss" his probation violations "because of the enormity of the delay" between his new criminal charges and the Commonwealth's filing of a VOP motion. Dunn's Brief at 12. We consider the applicable standard of review: "[I]n an appeal from a sentence imposed after the court has revoked probation, we can review[, *inter alia*,] the validity of the revocation proceedings[ and] the legality of the sentence imposed following revocation." ***Commonwealth v. Wright***, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted). A claim that the trial court violated a defendant's right to a speedy revocation hearing "pertains to the validity of the proceedings. 'In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence.'" ***Id***. (citations omitted).

This Court has stated:

"Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

In order to revoke a defendant's probation, "the VOP court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime . . . ."

***Commonwealth v. Parson***, 259 A.3d 1012, 1019 (Pa. Super. 2021) (citations omitted).

- 8 -

Pennsylvania Rule of Criminal Procedure 708 provides that a trial court "shall not revoke . . . probation . . . unless there has been . . . a hearing held as speedily as possible." Pa.R.Crim.P. 708(B)(1). Pennsylvania courts have interpreted the phrase, "as speedily as possible," "as requiring a probation violation hearing within a reasonable time. In determining whether a VOP hearing is held within a reasonable period, we examine 'the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay.'" **Wright**, 116 A.3d at 137 (citations omitted). "[T]here is no presumptive period in which a defendant's probation must be revoked[;] revocation hearings must be held with reasonable promptness after a probation officer is chargeable with knowing that probation has been violated." **Id**. at 138 (citation omitted). The "absence of adequate explanation for the delay must be weighed" against the Commonwealth). **Id**. at 139 (citation omitted).

"[A] defendant's probation will be 'extended by his ongoing delinquency.'" **Id**. at 136 (citation omitted). Finally, "a sentence for a violation of the terms of probation can be imposed after the expiration of the probationary period if the revocation is based on a violation which occurred within the probationary period" "and the sentence [is] imposed within a reasonable time after the expiration of the probationary period." **Id**. at 137.

We address Dunn's various arguments *seriatim*. First, he asserts that: the Commonwealth did not file a VOP motion at the time of his arrest in May

2024; and "[i]nstead, [he] notified his supervising officer, [PO] Jurista and was given a warning."[5] Dunn's Brief at 11. Dunn then argues, as noted above, that he was "awaiting trial on the [November 2023 charges and] could have bailed out, except for this [VOP] hearing, so it has prejudiced his liberty as well as future sentencing." *Id*. Dunn cites Pa.R.Crim.P. 708, as well as Section 71.4 of the Pennsylvania Code, which he summarizes as providing "that a revocation hearing shall be held within 120 days of the date that the Board received verification of a plea." *Id*. at 12 (*citing* 37 Pa. Code § 71.4(1)). Dunn then reasons that: (1) "113 days passed" from his August 2023 plea "before he was declared an absconder;" (2) in any event, following his arrest on May 6, 2024, the Commonwealth "knew his whereabouts," "[t]he time from arrest until his [VOP] hearing was 265 days[,]" and (3) "[t]his is far longer than the 120 days in the statute, with no explanation." *Id*. Dunn contends that nothing prevented the Commonwealth from filing the VOP motion "in a timely manner since he was in custody." *Id*. Dunn further claims prejudice, as he "could not work to earn money for lawyers or his family" and "[i]t is difficult to communicate with a client while they are incarcerated." *Id*. at 13.

First, we note that at the VOP hearing, the trial court rejected Dunn's reliance on Section 71.4 of the Pennsylvania Code. The trial court found this

---

[5] We reiterate that at the VOP hearing, Dunn testified that he notified PO Jurista of his earlier charges of marijuana and driving while operating privileges were suspended or revoked, not of his November 2023 drug and firearms charges. *See* N.T., 5/23/25, at 36.

statute applied to a revocation of **parole** for a **parolee**, and thus was not relevant to the instant revocation of **probation** matter. Dunn did not dispute this finding. **See** N.T., 5/23/25, at 5-6.

After careful review, we determine the trial court did not err in finding Section 71.4 did not apply to the instant matter. **See Commonwealth v. Lewis**, 180 A.3d 786, 788 (Pa. Super. 2018) (stating that "[a] trial court's application of a statute is a question of law, . . . our standard of review is plenary[, and] our review is limited to determining whether the trial court committed an error of law"). Section 71.4 falls within a chapter entitled, "Arrest and Hearing for **Parole** Violators." The plain language of Section 71.4 sets forth "procedures [to] be followed before a **parolee** is recommitted as convicted violator." 37 Pa. Code § 71.4 (emphasis added). Accordingly, Section 71.4 does not lend relief to Dunn, who was on **probation**.

Second, with respect to the trial court's holding a hearing "as speedily as possible" under Rule 708, we determine that no relief is due. Pa.R.Crim.P. 708(B)(1). On appeal, Dunn ignores that the Commonwealth provided an explanation why it did not file a VOP motion earlier — that Dunn "was incarcerated . . . in a state correctional facility[;] the bench warrant was acting as a detainer[; once Dunn] was paroled on that, the bench warrant was dissolved[;]" and the Commonwealth filed the [VOP motion] as soon as the bench warrant was lifted[,] within a couple days." N.T., 5/23/25, at 5. The Commonwealth also argued there was no "hard and fast rule as to what

speedily as possible means," and in this case, there was "no loss of liberty[, as Dunn] was serving a state sentence[ and was] now on bail." *Id*. at 5, 6. The trial court stated that it "adopt[ed]" the Commonwealth's position and denied Dunn's motion to dismiss. *Id*. at 7.

Our review has not revealed any authority in support of the Commonwealth's implicit position above — that it could not file a VOP motion before the trial court lifted the bench warrant against Dunn. Nevertheless, Dunn did not challenge the Commonwealth's explanation. *See id*. We reiterate that: Dunn incurred the new drug and firearm charges in November 2023; the Commonwealth filed the motion for the issuance of a bench warrant three months later in February 2024; and the Commonwealth filed the VOP motion eleven months thereafter in January 2025. The trial court initially scheduled a hearing for February 4, 2025, but the defense filed three requests for continuances, resulting in the final hearing date of May 23, 2025.

Saliently, at the VOP hearing and in this appeal, Dunn did not challenge the Commonwealth's contention that he did not suffer prejudice because "[h]e was [already] serving a state sentence" and was free on bail by the time of the VOP hearing. N.T., 5/23/25, at 6. Instead, on appeal Dunn asserts, for the first time, that he "could not work to earn money for lawyers or his family." Dunn's Brief at 13. *See Commonwealth v. McFalls*, 251 A.3d 1286, 1293 (Pa. Super. 2021) (stating that "[i]t is well-settled that to preserve an issue for review, a party must make a timely and specific objection at trial" and an

- 12 -

appellant may not raise "'a new and different theory of relief' for the first time on appeal"). In light of all the foregoing circumstances, we conclude the trial court did not err in denying Dunn's motion to dismiss on the basis of an untimely VOP hearing. Dunn's first issue merits no relief.

In his second issue, Dunn argues that he did not receive a "*Gagnon I*" hearing.[6] He offers no discussion beyond this bald claim. This Court has explained:

> When a parolee or probationer is detained pending a revocation hearing, due process requires [first] a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed.[7] . . .
>
> * * * *
>
> *. . . [A] Gagnon I hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: the Commonwealth must show probable cause that the violation was committed.*

*Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000) (citations omitted and emphasis added).

---

[6] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[7] "Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made." *Ferguson*, 761 A.2d at 617. A *Gagnon II* hearing entails two decisions: (1) whether the probationer "has in fact acted in violation of one or more conditions of his . . . probation[;]" and (2) whether the probationer should "be recommitted to prison or . . . other steps be taken to protect society and improve chances of rehabilitation[. A] *Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards[.]" *Id*.

> The purpose of the requirement of a *Gagnon I* hearing . . . is to ensure against detention on allegations of violations that have no foundation of probable cause. If before his . . . probation is revoked a . . . probationer has not complained of the lack of a *Gagnon I* hearing, he has already suffered the harm that the omission allegedly caused; since the substance of the revocation proceeding is not affected by the omission, the . . . probationer will not be heard to complain later.

*Perry*, 385 A.2d at 520.

Additionally, this Court has held that when a probationer "has been arrested and after a preliminary hearing . . . has been held for indictment and trial in the Court of Common Pleas," a *Gagnon I* hearing is not necessary. *Commonwealth v. Davis*, 336 A.2d 616, 622-23 (Pa. Super. 1975). "The purpose of [a *Gagnon I*] hearing will have been served by the preliminary hearing." *Id*.; *see also Commonwealth v. Del Conte*, 419 A.2d 780, 781 n.2 (Pa. Super. 1980) (stating that "[w]hen the probation or parole violation is based on the commission of a crime, a preliminary hearing may substitute for a *Gagnon I* hearing").

After careful review of the record, we determine that Dunn has failed to preserve this issue for appellate review. Dunn briefly raised a claim, that he had not had a *Gagnon I* hearing, in his motion to dismiss the VOP motion. We deem that claim, however, premature; at that time, the trial court had already scheduled a hearing on the Commonwealth's VOP motion. At the hearing itself, however, when the trial court not only found him in violation and revoked his probation, but also imposed sentencing, Dunn did not raise

any challenge to the lack of a *Gagnon I* hearing. Accordingly, he may not pursue it now on appeal. *See Perry*, 385 A.2d at 520.

Furthermore, the Commonwealth attached to its VOP motion a copy of the trial docket for Dunn's November 2023 drug and firearms charges.[8] It showed that the magisterial district court held the charges for the Court of Common Pleas. Dunn did not dispute this trial docket, and indeed, at the VOP hearing, testified that he had filed a suppression motion. In light of these circumstances, and the absence of any supporting argument by Dunn, at the VOP hearing or in this appeal, we conclude that Dunn has failed to establish grounds for relief on the basis of a lack of a *Gagnon I* hearing. *See Davis*, 336 A.2d at 622-23. Thus, no relief is due on his second issue.

In his third issue, Dunn avers he did not receive written notice of his probation violations, nor service of the VOP motion.[9] He offers no further discussion.

After careful review, we determine no relief is due. The certificate of service, attached to the VOP motion, stated that the Commonwealth served the motion by first class mail to Dunn at his state prison address, as well as his attorney in the Public Defender's Office. In any event, it is clear that Dunn

---

[8] This criminal matter arose in York County and has the trial docket number CP-67-CR-0004232-2024.

[9] Dunn did not present any argument on this issue at the VOP hearing, but included it in his motion to dismiss the VOP motion. Thus, he has preserved it for our review. *See* Pa.R.A.P. 302(a).

filed a counseled motion to dismiss the VOP motion. At the ensuing hearing, Dunn had the opportunity to both argue his motion to dismiss and to defend against the VOP allegations. Dunn has not raised any claim of prejudice. We conclude that no relief is due on his third issue.

In his final issue, Dunn asserts his sentence, of nine to thirty-six months' imprisonment, was illegal under 42 Pa.C.S.A. § 9771. His entire discussion is as follows:

> [A]ll of the alleged violations in the petition are technical ones and would have occurred on . . . Dunn's period of probation. This is governed by 42 Pa.C.S.A. § 9771. . . . Dunn therefore could only be sentenced to total incarceration if the court found that the violations involve a weapon or a controlled substance. In that event a first violation carries a maximum of 14 days. Since no other violation was filed while on probation, this is his first violation. His sentence therefore is far beyond that maximum.

Dunn's Brief at 14.

Dunn raised this issue for the first time in his Rule 1925(b) statement. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa. Super. 2011) (noting that a "claim is waived [if] it was raised for the first time in [the a]ppellant's Pa.R.A.P. 1925(b) statement"). However, this Court recently held, *en banc*, that "a claim that a court failed to follow the limitations imposed by section 9771(c) is a challenge to the legality of a sentence and thus not subject to issue preservation requirements." *Commonwealth v. Seals*, 353 A.3d 747, 752 (Pa. Super. 2026) (*en banc*). Thus, we will consider Dunn's issue, despite his raising it for the first time on appeal and his paltry discussion.

We consider the applicable standard of review:

> We review a challenge to the legality of a sentence *de novo* and with a plenary scope of review. Where, as here, our statutory analysis concludes that the trial court's authority is "preconditioned on the finding of a triggering fact," the "legality of sentence claim includes our *de novo* review of whether the requisite fact exists." To the extent that our analysis "requires us to engage in statutory interpretation," that too "presents a question of law," of which we engage in a *de novo* review.

*Id*. at 766-67 (citations omitted). "[W]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Commonwealth v. Simmons*, 262 A.3d 512, 516 (Pa. Super. 2021) (*citing*, *inter alia*, 1 Pa.C.S.A. § 1921(b)).

Dunn relies on Section 9771(c)[10] of the Sentencing Code,[11] which provides in pertinent part:

> **(c) Limitation on sentence of total confinement.** There is a presumption against total confinement for ***technical*** violations of probation. The following shall apply:
>
> > (1) The court may impose a sentence of total confinement upon revocation only if:
> >
> > > (i) the defendant ha***s been convicted of another crime***; [or]
> >
> > [List of additional conditions.]
>
> > * * * *

_____

[10] The trial court imposed the underlying sentencing when the prior version of Section 9771 was in effect; the new version took effect on October 20, 2025. Nevertheless, the provisions of Subsection 9771(c) remained the same.

[11] ***See*** 42 Pa.C.S.A. §§ 9701-9799.75.

(2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more **technical** violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant shall be sentenced as follows:

(i) For a first **technical** violation, a maximum period of 14 days.

(ii) For a second **technical** violation, a maximum period of 30 days.

(iii) For a third or subsequent **technical** violation, the court may impose any sentencing alternatives available at the time of initial sentencing. . . .

42 Pa.C.S.A. § 9771(c)(1)(i), (2)(i)-(iii) (emphases added).

Here, the trial court considered, *inter alia*, that in September 2023, Dunn pleaded guilty to possession of a small amount of marijuana.[12] **See** Trial Court Opinion, 9/30/25, at 9. The court thus reasoned that under section 9771(c)(1)(i), it "was authorized to impose confinement" of nine to thirty-six months. **Id**.

After review of the record, we determine Dunn is not entitled to relief on this sentencing issue. Section 9771(c)(1)(i) provides that a trial court "may impose a sentence of total confinement on revocation" if "the defendant has been convicted of another crime." 42 Pa.C.S.A. § 9771(c)(1)(i). Both the Commonwealth's motion to revoke and the trial court's opinion cited Dunn's guilty plea to possession of a small amount of marijuana. Dunn did not

---

[12] As noted above, however, the Commonwealth's motion to revoke stated that Dunn pleaded guilty to this charge in **August** 2023.

dispute, at the VOP hearing or on appeal, that he incurred a conviction of another crime while on probation. Regardless of whether, as Dunn argues, we categorize his violations as "technical," we agree that under the plain language of section 9771(c)(1)(i), the trial court had authority to impose a sentence of confinement. *See Simmons*, 262 A.3d at 516. As Dunn presents no other challenge to this sentence, we do not disturb the imposition of nine to thirty-six months' imprisonment.

For the foregoing reasons, we determine that no relief is due on Dunn's claims. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2026